### THE OMAHA NATIONAL BANK,
A NATIONAL BANKING ASSOCIATION, APPELLANT, V.
### GODDARD REALTY, INC., ET AL., APPELLEES.

316 N.W.2d 306

Filed February 19, 1982.   No. 43918.

Milton A. Katskee and Harry R. Henatsch of Katskee & Henatsch for appellant.

Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler for appellee Waldinger Corp.

Kutak Rock & Huie for appellees Bailey Plumbing & Micklin Home Improvement.

Wall, Wintroub & Weiner for appellee Brase Electric.

Abrahams, Kaslow & Cassman for appellee Creative Kitchens.

John J. Fitzgerald, Esq., for appellee Wemhoff.

Jon Lance Jabenis, Esq., for appellee Micklin Lumber.

Walsh, Walentine & Miles for appellees Hill Constr. Co. and Chips Supply Co.

Heard before KRIVOSHA, C.J., BRODKEY, WHITE, and HASTINGS, JJ., and WINDRUM, District Judge.

KRIVOSHA, C.J.

The appellant, The Omaha National Bank (ONB), appeals from a judgment entered by the District Court for Douglas County, Nebraska, finding that certain subordination agreements executed by Hill Construction, Inc.; Don Hill, doing business as Chips Supply Co.; Brase Electric Co., Inc.; Bailey Plumbing Co., Inc.; Waldinger Corporation; Francis A. Wemhoff, doing business as Wemhoff Tile Co.; Micklin Home Improvement Co.; Creative Kitchen Interiors, Inc.; and Micklin Lumber Co. (Subcontractors) were invalid and unenforceable due to the fact that they were executed without valid consideration. We believe that the trial court was in error and that there was valid consideration for the subordination agreements. Accordingly, we reverse and remand with directions.

Goddard Realty, Inc., (Goddard) had, sometime before it obtained a construction loan from ONB, undertaken the renovation of a building on certain real estate involved in this action. It was Goddard's plan to renovate an older building and construct apartments and a health club center, as well as racquetball courts, a restaurant, and a lounge. For reasons which are not entirely clear in the record, but obviously were due to Goddard's failure to pay materialmen for work done prior to obtaining the construction loan from ONB, the project was temporarily suspended. At that time there were a number of unpaid materialmen on the project, some of whom had removed themselves from the job. Several of the materialmen who are appellees in this action had money owing to them for the previous

work and were paid for that work by reason of ONB's subsequent construction loan to Goddard.

Most of the evidence presented at the trial was by way of a trial stipulation and is without dispute. The stipulation provided that on July 27, 1979, Goddard, for value received, executed and delivered to ONB a certain deed of trust note in the principal amount of $700,000, representing the proceeds of a construction loan by ONB to Goddard. To secure the deed of trust note and the performance by Goddard of all the terms and conditions of a certain building loan agreement, Goddard executed and delivered to ONB a deed of trust, assignment of rents and security agreement covering certain real estate described in the stipulation as Lots 1, 2, 3, 4, 14, 15, 16, and the north 45 feet of Lot 13 in Block 5, John I. Redick's Subdivision, an addition to the City of Omaha, as surveyed, platted, and recorded in Douglas County, Nebraska, together with vacated alley between 29th Street and Park Avenue, from Dewey Avenue to a point 239 feet south of Dewey Avenue, abutting Lots 1, 2, 3, 14, 15, 16, and parts of Lots 4 and 13 (secured property). The parties further stipulated that the deed of trust, assignment of rents and security agreement, dated July 27, 1979, executed by Goddard, was filed for record in the office of the register of deeds of Douglas County, Nebraska, on August 1, 1979. The parties further stipulated that on July 27, 1979, Goddard further executed and delivered to ONB its demand promissory note in the sum of $147,000 which it secured by a second deed of trust covering the same real estate as described in the first deed of trust. As in the case of the first deed of trust, the second deed of trust was likewise filed for record in the office of the register of deeds of Douglas County, Nebraska, on August 1, 1979. The parties further stipulated that on November 5, 1979, ONB made demand upon Goddard pursuant to paragraph 8 of the building loan agreement for an additional cash deposit in the sum of $341,247.85 for the reason that as of said date it then appeared to ONB

that the cost of the project would exceed the cost estimates as set forth in the building loan agreement.

Paragraph 8 of the building loan agreement provided as follows: "(8) The Borrower agrees that at any time it appears that costs for the project will exceed the above estimate in Lender's opinion, Lender may make demand for additional cash deposit to cover such anticipated cost over-runs and Borrower will immediately deposit the required additional cash with the Lender for that purpose. No further advances shall be made from loan proceeds until such requirement has been complied with. Failure to make the required cash deposit within 20 days of such demand shall be considered a default under this Agreement."

The parties further stipulated that Goddard failed to make the cash deposit and therefore was in default. By reason of the default, ONB declared the deed of trust notes and deeds of trust held by it due and payable and sought to foreclose pursuant to Neb. Rev. Stat. § 76-1005 (Reissue 1976).

When the Subcontractors were not paid following Goddard's default to ONB, they each filed mechanics' liens which they maintain are superior to the claim of ONB under its deeds of trust.

Each of the Subcontractors who now claim that their liens are superior to that of ONB executed a document presented by ONB to each Subcontractor as each payment was made. The document is the form required by paragraph 4 of the building loan agreement and reads in part as follows: "This order will not be honored by the Bank until the following receipt has been signed by the payee.

"RECEIVED of The Omaha National Bank the sum of _____ Dollars $_____ in payment of the above order. In consideration of the said payment the undersigned hereby acknowledges that the mortgage in favor of The Omaha National Bank on the above property constitutes a prior lien, superior to any lien which the undersigned may

now have or hereafter acquire by virtue of furnishing labor or materials for the improvement of said property. Nothing herein contained shall prevent the undersigned from filing a mechanic's lien against the above property but such mechanic's lien shall be junior and subordinate to the lien of The Omaha National Bank." The signatures of the Subcontractors appear on each receipt. Paragraph 4 of the agreement provides in part as follows: "(4) Applications for advances under this agreement are to be made by the Borrower to the Lender in triplicate on form attached, on or about the first day of each month after the commencement of work hereunder, for work done during the preceding month or part thereof or upon payment of and presentation of receipts to the Lender for the items enumerated in Article Seven (7) hereafter."

According to the testimony of one of the officers of ONB, as each voucher was submitted by Goddard on behalf of a Subcontractor, an officer of ONB reviewed the documentation. After verification of the documentation, a cashier's check and cover letter for the payment of each item were prepared. The cashier's check and the cover letter, together with the receipt containing the subordination agreement, were sent to the Subcontractor with directions that he was to sign the receipt and the subordination agreement in return for cashing the check. Signed subordination agreements were received by ONB from every mechanic's lien claimant involved in this appeal.

The Subcontractors now maintain that the basis for their position is premised upon a legal conclusion that there was no valid consideration for executing the receipt subordinating their lien, and therefore their agreement to subordinate is not enforceable, notwithstanding the clear language of the receipt which each saw before signing.

Following a trial to the court, the court determined that ONB was entitled to foreclose the subject real estate but that its right to foreclosure was subject and inferior to the mechanics' liens filed by the

Subcontractors.

As we noted at the outset, there appears to be but one issue necessary for determination by this court. That issue is whether there was consideration for the agreement by the laborers and materialmen to subordinate their liens for the lien of ONB.

There appears to be no precise statement as to what constitutes consideration for an agreement other than the general declaration that in order for there to be consideration for an agreement there must be a benefit to one of the parties or a detriment to the other. See, *Commuter Developments & Investments, Inc. v. Gramlich*, 203 Neb. 569, 279 N.W.2d 394 (1979); *Dorland v. Dorland*, 175 Neb. 233, 121 N.W.2d 28 (1963). What that benefit/detriment must be or how valuable it must be varies from case to case. It is clear, however, that even "a peppercorn" may be sufficient. In *Asmus v. Longenecker*, 131 Neb. 608, 269 N.W. 117 (1936), we said: "'A valuable consideration to support a contract need not be one translatable into dollars and cents; it is sufficient if it consists of the performance, or promise thereof, which the promisor treats and considers a value to him.' . . . 'A valuable consideration may consist either in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other.'" *Id.* at 611, 269 N.W. at 119. To a similar effect see *Crawford State Bank v. McEwen*, 132 Neb. 399, 272 N.W. 226 (1937).

"'There is a sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, *whether or not there is any actual loss or detriment to him or actual benefit to the promisor.*'" (Emphasis supplied.) *Phelps v. Blome*, 150 Neb. 547, 555, 35

N.W.2d 93, 97 (1948). See, also, *In re Estate of Griswold*, 113 Neb. 256, 202 N.W. 609 (1925).

The Subcontractors argue that ONB did nothing more than it was legally obligated to do when it made payment directly to the various Subcontractors by certified check. This, of course, is not the case. As we have already noted, under the provisions of the building loan agreement, paragraph 4, applications for advances under the agreement were to be made by the borrower, Goddard, to ONB. There appears to be no right in the Subcontractors to make application for payment, nor any obligation on the part of ONB to deal directly with each individual Subcontractor. The advances, under the terms of the agreement, were to be made directly to Goddard. Likewise, ONB was not required to provide each Subcontractor with its guaranteed funds in the form of a certified check, but, rather, could have delivered all the loan proceeds to Goddard who might or might not have made prompt payment to the Subcontractors. The fact that each Subcontractor received direct bank proceeds which were available for use immediately was certainly more than the agreement required and must, for purposes of law, be determined to be "consideration." To hold otherwise would be to attempt to impose upon the definition of consideration requirements which do not exist in the law. The question of consideration in this state has never been dependent upon whether the promisor considered the benefit received sufficient, but only whether, as a matter of law, the promisee suffered a detriment or did anything which he was not otherwise required to do, no matter how significant in fact was the detriment or promise. We are unable to say that, as a matter of law, an agreement knowingly entered into by and between two sophisticated parties should now be set aside because the consideration given for the agreement was not what one of the parties considers of particular value.

The Subcontractors further argue that the direct

payment by ONB to the various Subcontractors does not constitute consideration because it was not bargained for or intended by the parties. This argument ignores both the building loan agreement and the language of the receipt signed by each of them. Paragraph 4 of the agreement specifically imposes upon Goddard the requirement of obtaining the execution of these receipt/subordination agreements as one of the conditions for obtaining payment. The Subcontractors argue that in order for a detriment to the promisee to constitute a valid consideration for a note or contract, it must have been within the express or implied contemplation of the parties and known to and agreed to by them, citing *Leach v. Treber*, 164 Neb. 419, 82 N.W.2d 544 (1957). It is difficult for the court to conceive how the Subcontractors can argue that the consideration was not within the express or implied contemplation of the parties when the document itself clearly and unequivocally recited the fact. The receipt says: "In consideration of the said payment the undersigned hereby acknowledges that the mortgage in favor of The Omaha National Bank on the above property constitutes a prior lien, superior to any lien which the undersigned may now have or hereafter acquire by virtue of furnishing labor or materials for the improvement of said property. . . ." While it may be true that the Subcontractors, not being a party to the building loan agreement, were not required to execute the receipt in order to obtain payment from Goddard, it is true that they did have to execute the receipt if they wanted to receive payment from Goddard with ONB funds or wanted to receive payment directly from ONB. The receipt declares in bold type that payment will not be made unless the document with its agreement to subordinate is executed by the Subcontractor. By signing the receipt before accepting the proceeds from ONB, they obviously bargained for and intended to be bound by the agreement. It is generally held that courts will not permit a party to avoid a contract into which he

has entered on the grounds that he did not attend to its terms, that he did not read the document which he signed and supposed it was different from its terms, or that it was a mere form. *Garsick v. Dehner*, 145 Neb. 73, 15 N.W.2d 235 (1944); *Lincoln Joint Stock Land Bank v. Bexten*, 129 Neb. 422, 261 N.W. 845 (1935); *Von Knuth v. Ryan*, 107 Neb. 351, 186 N.W. 81 (1921). The Subcontractors are simply in no position to now contend that the consideration was not either expressly or impliedly within the contemplation of the parties when the document itself expressly makes it clear that the agreement to subordinate is the very consideration referred to in the receipt and was required as a condition of obtaining payment from ONB.

For these reasons we believe that there was sufficient consideration to create a binding agreement by and between the Subcontractors and ONB which the Subcontractors cannot now avoid on the grounds that the agreement was not binding. The judgment of the trial court is reversed and remanded with directions to reestablish the priorities of the various lienholders in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.