## CONCLUSION

Carngbe is entitled to credit for 197 days for time served, or 193 days for his prior criminal case wherein he was acquitted and another 4 days for time served on this charge. We therefore modify Carngbe's sentence to provide for a credit for time served of 197 days. As modified, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.

———————

JACK L. IRWIN, APPELLANT, V.
WEST GATE BANK, APPELLEE.
___ N.W.2d ___

Filed June 20, 2014.   No. S-13-322.

1. **Judgments: Appeal and Error.** The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous.
2. ____: ____. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.
3. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.
4. **Contracts: Consideration.** Consideration is an essential element to the validity of a contract.
5. **Security Interests.** A secured party has a right but not a duty to take possession of collateral.
6. ____. A secured party has no duty to preserve, move, or store secured property over which it has no physical control or possession.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Terry K. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Brian S. Kruse, of Rembolt Ludtke, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, MCCORMACK, MILLER-LERMAN, and CASSEL, JJ.

Per Curiam.

## NATURE OF CASE

Jack L. Irwin appeals the order of the district court for Lancaster County in which the court found that the parties had not entered into an enforceable contract and entered judgment in favor of West Gate Bank (West Gate) on Irwin's claim for breach of contract or breach of warranty. We affirm.

## STATEMENT OF FACTS

The parties in this case are connected to one another through a bankrupt corporation named Shade, Inc. Irwin owned a commercial building in which Shade was a tenant; Irwin also owned a warehouse that Shade rented to store personal property. West Gate held notes payable from Shade; the notes were secured by Shade's personal property. In 2002, Shade defaulted on the notes. After collecting from guarantors, West Gate was still owed a considerable sum from Shade.

In early 2005, Irwin approached West Gate requesting assistance with regard to an issue relating to Shade. Shade was delinquent on its rent for the warehouse. Irwin had found a new tenant but needed to move Shade's personal property to a nearby bay before the new tenant could move in. West Gate's president, Carl Sjulin, told Irwin that West Gate would not object to Irwin's moving the property. Irwin stated that he would have his attorney draft a document to memorialize the understanding between Irwin and West Gate. The resulting document was titled "Abandonment" (Abandonment document) and provided in its entirety as follows:

> For good and valuable consideration, the receipt of which is hereby acknowledged, and including the financial responsibility for the expense of dismantling, moving and storage, West Gate . . . , 6003 Old Cheney Road, Lincoln, Nebraska 68516, for itself, and for anyone claiming through it, hereby abandons all of its right, title and interest in and to the personal property of Shade, Inc., including equipment, furniture, fixtures, machinery, goods, tools, leasehold improvements and materials, whether manufactured or awaiting manufacture, currently

located at 5049 Russell Circle, Lincoln, Nebraska, or 5100 North 57th Street, Lincoln, Nebraska. This abandonment is made to . . . Irwin, the owner of 5049 Russell Circle and 5100 North 57th Street, and past landlord of Shade, Inc., where such personal property is currently located. West Gate . . . hereby also agrees to hold . . . Irwin harmless from any claims made to such property through West Gate . . . , in any fashion. This abandonment may be signed and delivered by facsimile, and any such copy shall be as effective as an original.

The Abandonment document was dated January 12, 2005, and was signed by Sjulin as West Gate's president.

Shade filed for bankruptcy in April 2005 in the U.S. Bankruptcy Court for the District of Nebraska. Irwin filed a claim in Shade's bankruptcy case in which he asserted that West Gate had "'abandoned'" its security interest in Shade's personal property to Irwin. In July 2006, Shade's bankruptcy trustee filed a motion to sell Shade's personal property free and clear of liens. Irwin resisted the trustee's motion, but the trustee proceeded with an auction of the personal property, and in August, the bankruptcy court granted the trustee's motion and confirmed the sale of the personal property. Irwin testified that he had unsuccessfully bid $175,000 for the property.

In January 2007, the trustee filed a notice of intent to distribute the proceeds of the auction to West Gate, which, the trustee asserted, had a perfected security interest in the property. Irwin filed an objection, asserting that he rather than West Gate was entitled to the proceeds. At an evidentiary hearing in the bankruptcy court on the trustee's notice of intent to distribute, Irwin presented evidence to support his objection. Irwin's evidence included the Abandonment document. The evidence also included the affidavit of Sjulin in which he asserted that West Gate had not assigned or terminated its security interest in Shade's personal property. On May 17, the bankruptcy court filed an order in which it overruled Irwin's resistance and approved distribution of the proceeds to West Gate. In the order, the bankruptcy court stated the following with regard to Irwin's objection:

The objection of . . . Irwin is overruled. The "ABANDONMENT" document is not an assignment of a perfected security interest and it is not a release of the perfected security interest. The document may give . . . Irwin some claim against West Gate . . . , but as between the trustee and the secured creditor [West Gate], it is the trustee's obligation to turn over the proceeds and the personal property to the secured creditor.

Irwin appealed the bankruptcy court's order to the U.S. Bankruptcy Appellate Panel for the Eighth Circuit. On July 27, 2007, the appellate panel dismissed the appeal as moot. The appellate panel stated in its judgment:

The bankruptcy court denied [Irwin's] motion for a stay pending an appeal and when a similar request was not made of us, the trustee distributed the money pursuant to the bankruptcy court's order. The trustee now moves to dismiss the appeal as moot.

Because [Irwin] did not obtain a stay pending appeal nor make West Gate . . . a party to this appeal, we would be unable to grant effective relief to [Irwin], even if we thought his appeal had merit. Under the bankruptcy court's order, [Irwin] is free to make a claim against West Gate . . . in another forum under its "Abandonment."

Irwin thereafter filed this action against West Gate in the district court for Lancaster County. In the operative amended complaint filed February 27, 2012, Irwin asserted four claims for relief, three of which were later withdrawn. The claim that remained was labeled as a claim for "Breach of Contract and/or Warranty." Irwin alleged that West Gate had breached its obligations under the Abandonment document by failing to pay the auction sale proceeds over to Irwin.

West Gate filed an answer in which it denied, inter alia, that it had breached any obligation under the Abandonment document. West Gate alleged various affirmative defenses, including allegations that because of the bankruptcy court's May 17, 2007, order, Irwin's claims were barred by res judicata or claim preclusion and Irwin was collaterally estopped or barred by issue preclusion from making certain allegations in his complaint. West Gate also affirmatively alleged that the

purported contract between Irwin and West Gate lacked consideration. West Gate filed a counterclaim in which it alleged that to the extent the court construed the Abandonment document to convey West Gate's security interest to Irwin, the document was the result of a mutual mistake and did not fully state the agreement or intention of the parties; West Gate requested the court to order reformation to reflect the parties' mutual understanding and intent. During the course of these proceedings, West Gate has referred to various authorities, stating that "[i]f the debt is not transferred, neither is the security interest." See *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. 1996). These references were in support of West Gate's position that it was a legal impossibility to convey the security interest to Irwin without also transferring the underlying debt, the latter of which was not claimed by Irwin.

After a bench trial which included testimony from both Irwin and Sjulin, the district court filed its order on March 14, 2013. The court first considered the extent to which Irwin's claims were precluded by the bankruptcy court's decision. The court noted that the bankruptcy court order had provided that the Abandonment document was not an assignment or a release of West Gate's perfected security interest; the district court therefore found that the "doctrine of res judicata" applied to any claim by Irwin that the Abandonment document granted him a perfected security interest or represented a release by West Gate of its perfected security interest in the personal property of Shade. The court concluded, however, that the bankruptcy court's order did not preclude any other claim that Irwin might have against West Gate with respect to the Abandonment document.

The court therefore considered Irwin's claim for breach of contract or warranty. The court determined that the Abandonment document was not an enforceable contract, because, inter alia, there was no consideration exchanged between the parties and there was no mutual understanding of what the document was intended to mean or of its purpose. The court also determined that there was nothing in the document that could be interpreted as a warranty from West Gate

to Irwin. Having determined that the document was neither an enforceable contract nor a warranty, the court concluded that there was no merit to Irwin's claim of a breach of contract or warranty as alleged in the amended complaint. The court therefore entered judgment in West Gate's favor on Irwin's claims, and it dismissed West Gate's counterclaim for reformation as moot.

Irwin appeals the district court's order.

## ASSIGNMENTS OF ERROR

Irwin claims that the district court erred when it determined that (1) "res judicata" would apply to his claims that the Abandonment document was an assignment or release of West Gate's security interest in the personal property of Shade and (2) the Abandonment document was not an enforceable contract or a warranty.

## STANDARD OF REVIEW

[1,2] The trial court's factual findings in a bench trial of an action at law have the effect of a jury verdict and will not be set aside unless clearly erroneous. *Braunger Foods v. Sears*, 286 Neb. 29, 834 N.W.2d 779 (2013). When reviewing questions of law, however, we have an obligation to resolve the questions independently of the conclusion reached by the trial court. *Thomas & Thomas Court Reporters v. Switzer*, 283 Neb. 19, 810 N.W.2d 677 (2012).

## ANALYSIS

*Correctness of the District Court's Ruling Regarding the Preclusive Effect of the Bankruptcy Court Order Is Not Determinative of the Claim in This Action and Need Not Be Considered.*

Irwin claims in his first assignment of error, restated, that the district court erred when it determined that based on the "doctrine of res judicata," the order of the bankruptcy court precluded further litigation of whether the Abandonment document served as a release or assignment of West Gate's security interest in Shade's property. No party challenges the portion of the district court's order which determined that the

bankruptcy court order did not preclude further litigation as to whether West Gate breached the terms of the Abandonment document or any purported warranty contained therein. No party challenged the district court's authority to go forward with the trial of the only surviving claim in the operative complaint, i.e., Irwin's claim that West Gate breached the Abandonment document and/or the warranty. Given the foregoing, the correctness of the district court's order, which determined that the bankruptcy order precluded potential further litigation of whether the Abandonment document served as a release or assignment of West Gate's security interest in Shade's property, is not relevant to any issue in the case or necessary to the resolution of this appeal and we need not consider this assignment of error. See *Recio v. Evers*, 278 Neb. 405, 771 N.W.2d 121 (2009) (appellate court is not obligated to engage in analysis which is not needed to adjudicate controversy before it).

*The District Court's Rulings That There Was No*
*Consideration and That the Abandonment*
*Document Was Not an Enforceable*
*Contract or a Warranty*
*Were Not Error.*

Irwin next claims that the district court erred when it determined that the Abandonment document was not an enforceable contract or a warranty. Because the court's determination that there was no consideration was correct, its determination that there was not an enforceable contract was also correct. We reject this assignment of error.

[3] We note first that although Irwin assigns error to the court's finding that the document did not contain a warranty, he makes no specific argument regarding the existence of a warranty other than the general argument he makes to the effect that the court erred when it found that the document was not an enforceable contract. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *J.P. v. Millard Public Schools*, 285 Neb. 890, 830 N.W.2d 453 (2013). Therefore, we do not separately consider whether the

district court erred when it found that the document did not contain a warranty.

In this action, Irwin contended that a binding contract existed between himself and West Gate and that he sought to enforce what he believed were the terms of the Abandonment document. Among West Gate's affirmative defenses was the allegation that the purported contract "lacks consideration." The burden of proving insufficient consideration was on West Gate, which it successfully did. See *Schuelke v. Wilson*, 255 Neb. 726, 587 N.W.2d 369 (1998).

[4] Lack of consideration is relevant to whether the parties have formed an enforceable contract. See *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 820, 708 N.W.2d 235, 245 (2006) (stating that contract requires offer, acceptance, "and consideration furnished for its enforceability"). We have approved the proposition that "consideration is an essential element to the validity of a contract." *Middagh v. Stanal Sound Ltd.*, 222 Neb. 54, 59, 382 N.W.2d 303, 307 (1986). Actual consideration is therefore relevant to whether an enforceable contract was formed.

We have long observed: "'That the contract was lacking in consideration from its inception may be shown by extrinsic evidence, providing the proof thereof does not contradict or vary the contractual consideration named in the written contract . . . .'" *Barth v. Reber*, 135 Neb. 25, 28, 280 N.W. 219, 220 (1938). A statement that consideration for a promise was received is a statement of fact, not a term of the contract. As a statement of fact, it may be explained or contradicted by extrinsic evidence. The Restatement (Second) of Contracts § 71, comment *b*. at 173 (1981), states that "a mere pretense of bargain does not suffice, as where there is a false recital of consideration or where the purported consideration is merely nominal. In such cases there is no consideration . . . ."

In this case, the Abandonment document provides: "For good and valuable consideration, the receipt of which is hereby acknowledged, and including the financial responsibility for the expense of dismantling, moving and storage, West Gate . . . hereby abandons all of its right, title and interest in and to the personal property of Shade . . . ." Irwin

approached West Gate because West Gate held a secured interest in Shade's property. The enumerated consideration in the Abandonment document for West Gate's promise was Irwin's relieving West Gate of its duty to care for and move Shade's property. This is the consideration named in the document, and extrinsic evidence could be used to show that such consideration was meaningless and that hence, there was no consideration. See *Barth, supra*.

The district court received evidence which showed that West Gate's involvement in the property was by virtue of its security interest in such collateral but that it had not taken possession of the property. West Gate had no other interest in the property. Irwin testified that the sole consideration to West Gate, as recited in the Abandonment document, was being relieved of what he believed was West Gate's obligation to dismantle, move, or store Shade's property. However, West Gate had no such obligation.

[5,6] A secured party has a right but not a duty to take possession of collateral. Neb. U.C.C. § 9-609 (Reissue 2001). See, also, Neb. U.C.C. § 9-601 (Cum. Supp. 2012). If it takes possession, a secured party has a duty to use reasonable care in the custody and preservation of collateral. Neb. U.C.C. § 9-207(a) (Cum. Supp. 2012). The cases show that a secured party has no duty to preserve, move, or store secured property over which it has no physical control or possession. E.g., *City Nat. Bank v. Unique Structures, Inc.*, 49 F.3d 1330 (8th Cir. 1995). See 8 William D. Hawkland & Frederick H. Miller, Uniform Commercial Code Series § 9-207:1 (Cum. Supp. 2013-14) (cases collected). Where West Gate had no control or possession of the property, the Abandonment document's relief from the purported duty of West Gate was meaningless and could not constitute consideration for West Gate's promise. The district court's determination that there was no consideration was correct, and thus, there was no enforceable contract, as the district court ruled.

## CONCLUSION

Because the district court's determination regarding the preclusive effect of the bankruptcy court's ruling with respect

to an assignment or release of West Gate's security interest did not affect the court's consideration of the breach of contract or warranty claim in this case, we need not review the correctness of such determination on appeal. The district court's determinations that there was no consideration and that the Abandonment document was not an enforceable contract were correct. We therefore affirm the judgment of the district court.

AFFIRMED.

---

IN RE ESTATE OF RALPH GREB, DECEASED.
FIRST NEBRASKA TRUST COMPANY, PERSONAL REPRESENTATIVE
OF THE ESTATE OF RALPH GREB, DECEASED, APPELLEE AND
CROSS-APPELLEE, V. RICHARD GREB, APPELLEE AND
CROSS-APPELLANT, AND NANETTE J. WRIGHT,
APPELLANT AND CROSS-APPELLEE.

___ N.W.2d ___

Filed June 20, 2014.    No. S-13-543.

1. **Decedents' Estates: Appeal and Error.** An appellate court reviews probate cases for error appearing on the record made in the county court.
2. **Decedents' Estates: Judgments: Appeal and Error.** When reviewing questions of law in a probate matter, an appellate court reaches a conclusion independent of the determination reached by the court below.
3. **Decedents' Estates: Appeal and Error.** The probate court's factual findings have the effect of a verdict, and an appellate court will not set those findings aside unless they are clearly erroneous.
4. **Joint Tenancy: Banks and Banking.** Neb. Rev. Stat. § 30-2718(a) (Reissue 2008) provides that a multiple-party account may be with or without a right of survivorship between the parties.
5. **Decedents' Estates: Banks and Banking: Contracts.** Neb. Rev. Stat. § 30-2719(a) (Reissue 2008) provides that a contract of deposit establishes the type of account if the contract contains provisions in substantially the form provided by that subsection.
6. **Corporations: Collateral Attack.** A private party may collaterally attack the legal stature of a corporate entity if it has been dissolved and retains neither a de jure nor a de facto existence.
7. **Corporations.** A de facto corporation exists when there has been a good faith attempt to organize the corporation, statutory requirements have been colorably complied with, and the corporation has exercised the functions or conducted the business that it was organized to perform.