LESLIE K. WILD, APPELLEE, V.
BRIAN P. WILD, APPELLANT.
696 N.W.2d 886

Filed May 10, 2005.   No. A-04-954.

496

Stephanie Weber Milone for appellant.

Carll J. Kretsinger, P.C., for appellee.

IRWIN, CARLSON, and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Brian P. Wild appeals from an order of the district court for Sarpy County which granted his ex-wife Leslie K. Wild's complaint for removal of the parties' minor child, Amber Lynn Wild, from Nebraska to Ohio. On appeal, Brian challenges the district court's findings that Leslie demonstrated a legitimate reason for removal and that removal is in Amber's best interests and contests the district court's failure to change custody or to award Brian attorney fees. Upon our de novo review of the record, we find that the district court abused its discretion in finding that Leslie satisfied her burden of proof with respect to both demonstrating a legitimate reason for removal and showing that removal is in Amber's best interests. As such, we reverse that finding of the district court. We find no abuse of discretion by the district court concerning either Brian's request for a change of custody or his request for attorney fees. As such, we affirm those rulings of the district court.

## II. BACKGROUND

Brian and Leslie were married on April 3, 1993, in Florida. The record indicates that Brian was a member of the U.S. Air Force during the marriage and continues to be at this time, stationed at Offutt Air Force Base in Bellevue, Nebraska (Offutt). Leslie was employed as a civil service employee working at

Offutt during the latter portion of the marriage. Amber was the only child born to the parties during the marriage, and her date of birth is October 12, 1994. The marriage was dissolved by a decree entered on February 20, 2003. The record indicates that the decree incorporated a "settlement agreement to all issues presented to include custody, visitation and support."

In the dissolution decree, the district court found that both Brian and Leslie were fit and proper persons to be awarded custody of Amber, but that it was in Amber's best interests for custody to be awarded to Leslie. Brian was awarded visitation rights. Brian was also ordered to pay child support. In addition, the decree contained the following provision, which contemplates the possibility of either Brian's or Leslie's being relocated by the military because of their employment:

28. **CHANGE OF CIRCUMSTANCES:** That [Leslie] is a civil service employee of the United States Air Force; and, [Brian] is a military member of the United States Air Force; and, both parties acknowledge that they are both subject to being reassigned by the Air Force to another military location outside of the State of Nebraska; and, as such, both parties agree that if either party should be so reassigned by the United States Air Force outside of the State of Nebraska, that such reassignment will constitute a change of circumstance upon which either party may seek a modification of the provisions of this decree as same would pertain [to] the visitation rights of [Brian] with [Amber].

On October 7, 2003, Brian filed an application and affidavit for citation in contempt. In the filing, Brian alleged that Leslie had taken Amber to Idaho on vacation from "June 21-29, 2003, and [from] July 23-August 3, 2003," that those dates conflicted with dates on which Brian was to have had visitation in accordance with the decree, that Brian had notified Leslie that he was opposed to her taking Amber on vacation on those dates, and that Leslie's nonetheless taking Amber on vacation on those dates was "in defiance of the provisions" of the decree. On October 7, the district court issued an order commanding Leslie to appear and show cause why she should not be held in contempt. The record does not reflect any further disposition of Brian's application.

On November 7, 2003, Leslie filed a motion for leave to remove Amber from Nebraska. In the motion, Leslie alleged that there was uncertainty about her future employment at Offutt, that she had obtained a position with a company located at Wright-Patterson Air Force Base in Ohio, that the new position would pay less than her existing position but would provide for upward mobility, that the housing available in Ohio would be an improvement over her housing in Nebraska, that the schools would be "equal to or better than" Amber's school in Nebraska, that Amber had stated a desire to move to Ohio, and that removal would be in Amber's best interests. On November 19, Leslie filed a notice of withdrawal of the motion to remove, indicating that the position to which she had been hired in Ohio had been eliminated "due to funding."

On April 23, 2004, Leslie filed a complaint again requesting leave to remove Amber from Nebraska to Ohio. Leslie alleged that she had "been offered and ha[d] accepted a position of employment to begin June 1, 2004," with a company located in Dayton, Ohio. Leslie alleged that the new position would provide a "substantial increase in salary" over her position in Nebraska. Leslie made no allegations concerning "upward mobility" as in her previous request to remove Amber to Ohio. Leslie sought modification of child support and visitation as well as permission to remove Amber to Ohio. On May 25, Brian filed an answer and counterclaim. Brian sought to have the court deny the request to remove Amber to Ohio, alleged that Leslie should be equitably estopped from removing Amber to Ohio, and sought a change in custody.

On June 30, 2004, the district court heard testimony and received evidence on Leslie's complaint and Brian's answer and counterclaim. Leslie testified that she had already moved to Ohio, although the record indicates that Amber had remained in Nebraska with Brian pending resolution of the case. When asked why she "ch[o]se to go to Ohio," Leslie responded:

I chose — I made a decision about last June or July [2003] that my relationship with [my fiance] was getting serious. My job [at Offutt], there w[ere] a lot of changes coming down, rumor has it that [my employer] here in Omaha will close within the next two to three years. There was a lot of

uncertainty with whether or not it was going to be open. My career progression was at its highest level as a GS-9, and I wanted to — to be able to progress in the career that I've chosen in security.

Leslie acknowledged that it was "basically a rumor" that her position at Offutt might be eliminated or moved, and she testified that her office "was going to go through a restructure." Leslie testified that the staff of the office she worked in at Offutt was "slowly but surely shrinking" and that "[t]here was a lot of work going away." However, she further testified that the job she did at Offutt was, as of the date of the hearing, still being done at Offutt, although her position had been filled by somebody else.

Leslie indicated that her new job in Ohio provided a pay increase of approximately $7,000 per year, before taxes, over the position she had in Nebraska. Leslie testified, however, that if she were allowed to remove Amber to Ohio, she would be willing to be responsible for paying to transport Amber back to Nebraska for visitation with Brian "eight to ten" times per year. Leslie testified that she would accompany Amber on flights back to Nebraska, at a likely cost of $269 to $325 per ticket, those 8 to 10 times per year. The cost to Leslie of such transportation would thus be approximately between $4,300 and $6,500 per year, depending on the cost of the tickets and the number of trips.

Leslie testified that her former job in Nebraska was "part of civil service," that she received vacation time each pay period, that she received support toward medical and dental expenses, that she had flexibility with regard to hours, and that she had the opportunity to work overtime. Leslie testified that her new job in Ohio was an entry-level position with a security company working at Wright-Patterson Air Force Base and that her new job was a position from which she could be terminated at any time.

Leslie testified that she and Amber lived in a "rather big apartment" in Nebraska and that the apartment complex had no playground, although there was a school playground located down the street for Amber. In Ohio, Leslie had moved in with her fiance, and she testified that he has a three-bedroom home with a "good-sized backyard [and] a small front yard for Amber to play in."

The record indicates that Amber has some special education needs associated with a "serious reading problem." Amber's school in Nebraska had placed her in a special education program to address the reading problem. Leslie testified that she had not checked into the availability of any special reading programs for Amber in Ohio. Leslie testified that she did not know of any educational advantages that would be made available to Amber by removing her to Ohio and that Leslie "ha[d] not had a chance to look at [such advantages] yet." Leslie did not know what school Amber would attend in Ohio, although one school was located near Leslie and her fiance's home, and she did not know whether Amber's school would utilize a "year-round" calendar or a "traditional" calendar; the record indicates that both calendars are available in the area Leslie proposed to remove Amber to.

Brian has another daughter, from a prior relationship— Amber's 15-year-old half sister, Andrea Wild. Brian has had sole custody of Andrea since 1999. In addition, one of Leslie's brothers, his wife, and their children live in Omaha. Most of the rest of Leslie's extended family lives in Idaho or Washington, and Brian's extended family lives in Colorado or Arizona. The record does not indicate any extended family in Ohio.

On July 21, 2004, the district court entered an opinion and order. The court held as follows:

> The first question to be answered by the Court is: does [Leslie] have a legitimate reason for the move.

> The evidence presented to the Court was that [Leslie's] job prospects for advancement as a civilian employee of the Air Force at Offutt Air Force [B]ase were at a dead end, and if she were to advance she would be required to move in any case if she remained with the Air Force.

> Had [Leslie] elected to continue with her [former] employment she would in all likelihood have had to [be] relocated in the near future, and had she been required to do so the provision of the Decree, with reference to reassignment[,] would have been automatic. However, in this case it is the opinion of the Court that the automatic provision of the Decree is not operative as to change of circumstance and [*Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999),] and [its progeny] are controlling.

[Leslie] obtained a position in Ohio at a substantial increase in pay, and with what appears to be a job with a future and not subject to reassignment. Thus, it is the opinion of the Court that [Leslie] has [met] the threshold [test] of having a legitimate reason for moving.

The Court now must make a determination on the issue of the best interest of the child. The case law in this State sets out several areas to be used by the trial Court in determining whether the move would be in the best interest of the child.

The Court having considered these finds that the move to Ohio would be in [Amber's] best interest and grants [Leslie's] Motion to Remove [Amber].

The court entered a new visitation order, ordered Leslie to pay all costs of transportation, and ordered both parties to pay their respective attorney fees and costs. This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

Brian has assigned, inter alia, that the district court erred in granting Leslie's request to remove Amber to Ohio, in denying his request for a change of custody, and in denying his request for attorney fees. In light of our resolution of these assignments of error, we need not discuss Brian's other assignments of error.

### IV. ANALYSIS

#### 1. STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Tremain v. Tremain,* 264 Neb. 328, 646 N.W.2d 661 (2002); *McLaughlin v. McLaughlin,* 264 Neb. 232, 647 N.W.2d 577 (2002); *Vogel v. Vogel,* 262 Neb. 1030, 637 N.W.2d 611 (2002); *Brown v. Brown,* 260 Neb. 954, 621 N.W.2d 70 (2000); *Jack v. Clinton,* 259 Neb. 198, 609 N.W.2d 328 (2000); *Farnsworth v. Farnsworth,* 257 Neb. 242, 597 N.W.2d 592 (1999). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a

decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *McLaughlin v. McLaughlin, supra*; *Vogel v. Vogel, supra*; *Brown v. Brown, supra*. See, *Jack v. Clinton, supra*; *Farnsworth v. Farnsworth, supra*.

## 2. REMOVAL OF AMBER TO OHIO

Brian first asserts that the district court erred in granting Leslie's request to remove Amber to Ohio. We find that Leslie failed to carry her burden to demonstrate a legitimate reason for removing Amber to Ohio, because the record fails to demonstrate that the employment opportunity taken by Leslie provided a reasonable improvement in her career or an opportunity for career advancement. We further find that Leslie failed to carry her burden to demonstrate that allowing removal would be in Amber's best interests, because the record fails to demonstrate that Ohio provides any benefits to Amber under the various factors considered in the best interests analysis. As a result, we conclude that on the record provided, the district court abused its discretion in allowing Leslie to remove Amber to Ohio.

The relevant test to be applied in cases where a custodial parent seeks court permission to remove a minor child from the state has been set forth by the Nebraska Supreme Court on numerous occasions. See, *Tremain v. Tremain, supra*; *McLaughlin v. McLaughlin, supra*; *Vogel v. Vogel, supra*; *Brown v. Brown, supra*; *Jack v. Clinton, supra*; *Farnsworth v. Farnsworth, supra*. In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. *Id.* Under Nebraska law, the burden has been placed on the custodial parent to satisfy this test. See *Brown v. Brown, supra*.

### (a) Legitimate Reason to Leave State

Leslie has asserted, and the district court found, that she had a legitimate reason to leave Nebraska and take Amber to Ohio because of a career opportunity. At the time of the trial in this case, Leslie had already accepted a job in Ohio and moved from

Nebraska. We conclude, however, that Leslie failed to carry her burden to demonstrate that the employment in Ohio was a legitimate reason to leave Nebraska and take Amber to Ohio, because Leslie failed to demonstrate that the employment opportunity provided a reasonable improvement in her career or an opportunity for career advancement.

Previous cases in Nebraska have recognized that legitimate employment opportunities for the custodial parent may constitute a legitimate reason for leaving the state. See, *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000); *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999); *Carraher v. Carraher*, 9 Neb. App. 23, 607 N.W.2d 547 (2000). However, the Nebraska Supreme Court has specifically held that such legitimate employment opportunities may constitute a legitimate reason "where there is a 'reasonable expectation of improvement in the career or occupation of the custodial parent.'" *Farnsworth v. Farnsworth*, 257 Neb. at 252, 597 N.W.2d at 600, quoting *Gerber v. Gerber*, 225 Neb. 611, 407 N.W.2d 497 (1987). See, also, *Jack v. Clinton*, *supra*. Similarly, such legitimate employment opportunities may constitute a legitimate reason "where the custodial parent's new job included increased potential for salary advancement." *Jack v. Clinton*, 259 Neb. at 205, 609 N.W.2d at 333. See, also, *Farnsworth v. Farnsworth*, *supra*.

In *Jack v. Clinton, supra*, the Nebraska Supreme Court found that the custodial parent had met the threshold requirement of proving a legitimate reason for leaving Nebraska and removing the minor children to Pennsylvania. The evidence in that case included testimony from the custodial parent that her employment opportunity in Pennsylvania "offered greater potential for salary advancement than the job she had held" in Nebraska. *Id.* at 205, 609 N.W.2d at 334. In addition, the custodial parent had testified that her employment opportunity in Pennsylvania required less overtime and allowed her to spend more time with the minor children. On the basis of that evidence, the Supreme Court held that the district court had sufficient evidence to conclude that the custodial parent "had a reasonable expectation for improvement in her career." *Id.*

Similarly, in *Farnsworth v. Farnsworth, supra*, the Nebraska Supreme Court found that the custodial parent had met the threshold requirement of proving a legitimate reason for leaving Nebraska and removing the minor child to Colorado. The evidence in that case indicated that the custodial parent had conducted an unsuccessful search for better employment in Nebraska and, having failed to uncover such opportunities, obtained a job in Colorado "with greater income, benefits, and career-advancement potential" than her employment in Nebraska. *Farnsworth v. Farnsworth*, 257 Neb. at 252, 597 N.W.2d at 600. On the basis of that evidence, the Supreme Court held that "significant career enrichment is a legitimate motive in and of itself." *Id.* at 253, 597 N.W.2d at 600.

The present case is distinguishable from both *Jack v. Clinton, supra*, and *Farnsworth v. Farnsworth, supra*, because Leslie failed to adduce evidence comparable to the evidence adduced by the custodial parent in those cases. Leslie failed to present any evidence that her new employment in Ohio provided any opportunity for career advancement. Leslie testified that the position was an "entry level" security position and acknowledged that the position was one from which she could be terminated at any time. She did not testify or opine that there would be any opportunity for either career advancement or income increases. She did not testify that the job provided any benefits or any advantageous schedule. By comparison, the record indicates that Leslie's employment in Nebraska was a civil service position with the military that offered job security and benefits. Although the district court concluded that the position in Nebraska was a "dead end" position, there was no evidence to indicate that the position in Ohio offered any greater opportunity for advancement.

The record does indicate that the employment in Ohio was at a greater present salary, even without evidence of any kind of salary advancement opportunities. However, the record clearly indicates that this increase in salary is not of any benefit to Leslie or, more importantly, to the interests of Amber. Leslie indicated that her new position in Ohio paid approximately $7,000 per year more than her position in Nebraska. However, Leslie failed to produce any evidence indicating the cost-of-living differences

between Nebraska and Ohio, and further, Leslie testified that she would be responsible for paying all transportation costs associated with bringing Amber back to Nebraska to visit with Brian. The record indicates that those additional transportation costs may total as much as $6,500 per year or more.

Leslie failed to demonstrate that the employment opportunity in Ohio constitutes a reasonable expectation of improvement in her career or occupation or that it includes increased potential for salary advancement. To the extent the new position does offer an increase in Leslie's income, Leslie presented no evidence concerning the cost-of-living differences between Nebraska and Ohio, and the entire increase will be consumed just to pay for the costs of transporting Amber back to Nebraska for visitation with Brian.

We further note that the record in the present case does not indicate any other legitimate reason for Leslie to leave Nebraska and remove Amber to Ohio. Unlike the record regarding the custodial parent in *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000), the record in the present case does not indicate that Leslie's new employment opportunity offers any close proximity to extended family. Rather, the record in the present case indicates that there was some extended family in Nebraska, including one of Leslie's brothers, his wife, their children, and Amber's half sister, Andrea, who lives with Brian, but that there is no such extended family at all in Ohio. See, also, *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000) (legitimate reason to leave state shown by evidence of firm offer of employment that would enhance career and evidence of extended family in area of new employment). Additionally, although the record indicates that Leslie was motivated to move to Ohio to be nearer to her fiance, this is not a case concerning legitimate potential for the career advancement of a custodial parent's spouse occurring after a remarriage, or concerning a move to reside with a custodial parent's new spouse who is employed and resides in another state. Compare, *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002); *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

It is apparent that the district court placed significant emphasis on the fact that Leslie's position in Nebraska was subject to

potential reassignment or relocation. The district court noted that Leslie's "job prospects for advancement as a civilian employee of the Air Force at Offutt Air Force [B]ase were at a dead end," that "if she were to advance she would be required to move in any case if she remained with the Air Force," that "[h]ad [Leslie] elected to continue with her [former] employment she would in all likelihood have had to [be] relocated in the near future," and that "had she been required to do so the provision of the Decree, with reference to reassignment[,] would have been automatic."

■ The evidence, however, indicated merely a "rumor" that Leslie's position might be eliminated in Nebraska and a possibility that she could be reassigned or relocated by the military to a different location. There was no evidence that "in all likelihood" such relocation would happen. Rather, the parties jointly recognized that the possibility of relocation by the military was a reality of their respective employments, and the district court provided for such possibility in the dissolution decree. Speculation about rumors and possibilities cannot be sufficient to warrant allowing a custodial parent to voluntarily terminate employment in Nebraska and pursue a different job outside of Nebraska. Although custody is not to be interpreted as a sentence to immobility, the foregoing discussion demonstrates that the custodial parent must prove a legitimate reason for removing the minor child from the jurisdiction. See *Vogel v. Vogel, supra.*

As indicated above, we conclude that Leslie failed to satisfy her burden to demonstrate a legitimate reason for leaving Nebraska and removing Amber to Ohio. Unlike the evidence in every other case in Nebraska which has sustained a custodial parent's request to leave Nebraska for a new employment opportunity, the evidence in this case fails to indicate that the new position offers any opportunity for career advancement or salary advancement, and the actual immediate increase in salary does not afford a legitimate reason because none of the increase will benefit Leslie or the best interests of Amber because of Leslie's increased transportation costs to bring Amber back to Nebraska for visitation with Brian. Rather, the evidence adduced by Leslie in this case indicates that she wanted to move to Ohio to be nearer her fiance and to accept an entry-level position with a security company. Leslie presented no evidence that

would indicate that the new position afforded any opportunities for stability, benefits, or advancement superior to those of the position she had in Nebraska. As such, we conclude that the district court abused its discretion in finding that "[Leslie] obtained a position in Ohio at a substantial increase in pay, and with what appears to be a job with a future and not subject to reassignment."

### (b) Amber's Best Interests

As noted, we conclude that the district court abused its discretion in finding that Leslie met her burden to prove a legitimate reason for leaving Nebraska and removing Amber to Ohio. We further conclude, however, that even if Leslie's entry-level security job in Ohio could be considered a significant career advancement opportunity, Leslie further failed to meet her burden to prove that removal to Ohio is in Amber's best interests, because the evidence adduced by Leslie indicates no benefit to Amber of being removed to Ohio. The district court abused its discretion in finding to the contrary.

After clearing the threshold of demonstrating a legitimate reason for leaving the state and removing the minor child to another state, the custodial parent must demonstrate that it is in the child's best interests to continue living with him or her. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002); *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002); *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002); *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000); *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000); *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). In determining whether removal to another jurisdiction is in the child's best interests, the trial court considers (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation. *Id.*

In the present case, the district court did not elaborate on any of the best interests factors or give an indication of why the court determined that it was in Amber's best interests to be removed

from Nebraska to Ohio. Nonetheless, the court specifically found that "the move to Ohio would be in [Amber's] best interest[s]." We find that the evidence does not support this conclusion.

### (i) Each Parent's Motives

The first factor that must be considered is each parent's motives for seeking or opposing the removal of the minor child from the jurisdiction. We conclude that at most, the evidence demonstrates that the parties' motives are balanced; this factor does not weigh in favor of a finding that removal is in Amber's best interests.

The ultimate question in evaluating the parties' motives in seeking removal of a child to another jurisdiction is whether either party has elected or resisted a removal in an effort to frustrate or manipulate the other party. *McLaughlin v. McLaughlin, supra.* See, also, *Vogel v. Vogel, supra*; *Brown v. Brown, supra*; *Jack v. Clinton, supra*; *Farnsworth v. Farnsworth, supra.* Further, "while some legitimate explanations 'might seem less compelling than others . . . none should be summarily rejected at this stage of the analysis without weighing the other considerations and how they all come to bear on the overall impact on the child.'" *Jack v. Clinton,* 259 Neb. at 207, 609 N.W.2d at 334-35, quoting *Farnsworth v. Farnsworth, supra.*

The evidence in the present case indicates that Brian is an involved noncustodial father who regularly exercises his visitation and is concerned about the impact Leslie's removal of Amber from Nebraska to Ohio will have on that visitation. On the other hand, the evidence indicates that Leslie was motivated to seek removal to be nearer her fiance and to explore a different employment opportunity. As is true of the other cases decided by the appellate courts of Nebraska concerning this factor, we do not find that either party was acting in bad faith or with ill motives, and we conclude that the motives of the parties are balanced. See, *Tremain v. Tremain,* 264 Neb. 328, 646 N.W.2d 661 (2002); *McLaughlin v. McLaughlin,* 264 Neb. 232, 647 N.W.2d 577 (2002); *Vogel v. Vogel,* 262 Neb. 1030, 637 N.W.2d 611 (2002); *Brown v. Brown,* 260 Neb. 954, 621 N.W.2d 70 (2000); *Jack v. Clinton,* 259 Neb. 198, 609 N.W.2d 328 (2000); *Farnsworth v. Farnsworth,* 257 Neb. 242, 597 N.W.2d 592 (1999). As such, this

factor does not weigh in favor of a finding that it is in Amber's best interests to be removed to Ohio.

### (ii) Quality of Life

The second factor that must be considered is the potential that the move holds for enhancing the quality of life for the child and the custodial parent. This factor requires an analysis of a number of other considerations which bear upon the potential enhancement of the child's quality of life. The evidence in the record in this case fails to demonstrate that the proposed removal to Ohio will significantly enhance Amber's quality of life. Leslie failed to adduce sufficient evidence to support a finding that this factor weighs in favor of removal.

In determining the potential that the removal to another jurisdiction holds for enhancing the quality of life of the child and the custodial parent, a court should evaluate the following considerations: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the removal would antagonize hostilities between the two parties. See, *McLaughlin v. McLaughlin, supra*; *Vogel v. Vogel, supra*; *Brown v. Brown, supra*; *Jack v. Clinton, supra*; *Farnsworth v. Farnsworth, supra*. This list should not be misconstrued as setting out a hierarchy of considerations, and depending on the circumstances of a particular case, any one consideration or combination of considerations may be variously weighted. See *id.*

### a. Emotional, Physical, and Developmental Needs

The record indicates that both parties in this case are capable of providing for the emotional, physical, and developmental needs of Amber. The record suggests that both are loving parents genuinely concerned about Amber's needs. There was no evidence presented to suggest that either party is incapable or deficient in any way in providing for Amber's emotional, physical,

and developmental needs. As such, this consideration is equally balanced and does not weigh in favor of removal.

## b. Amber's Opinion or Preference

At the time of the trial in this matter, Amber was 9 years old. Leslie's attorney made an offer of proof at trial that if called, Amber would testify that she wants to go to Ohio, wants to try new things and see new places, and wants to remain with Leslie. This offer of proof was not made in response to any ruling by the court refusing proffered evidence, and when Brian's attorney objected to the offer of proof, the court overruled the objection, sustained the offer, and received Amber's deposition as evidence. In Amber's deposition, she testified that she was comfortable with moving to Ohio with Leslie, although Amber acknowledged that she would miss Brian. As such, the limited evidence in the record indicates that Amber is willing to move to Ohio, and this consideration may be seen as weighing in favor of allowing the removal.

## c. Enhancement of Income or Employment

As fully addressed above in our discussion of Leslie's failure to prove that the new employment opportunity constitutes a legitimate reason for removing Amber to Ohio, the record in this case does not demonstrate that the move will result in an enhancement of Leslie's income or employment. Leslie failed to demonstrate that the new position offers any greater opportunity for advancement or salary increases or any greater benefits or working hours than her position in Nebraska. Further, although Leslie testified that the new position would pay a higher salary, as discussed above, Leslie failed to present any evidence about the cost-of-living difference, and virtually the entire increase in pay will be consumed to pay for Leslie's obligation to transport Amber back to Nebraska for visitation with Brian. Leslie did not present any evidence concerning her fiance's income or employment. Compare *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002) (custodial parent's new spouse's income properly considered in this factor).

The result is that the record does not support a finding that Leslie's income or employment will be enhanced in any way

beneficial to Amber's best interests. This consideration does not weigh in favor of removal.

### d. Housing or Living Conditions

Leslie testified that her housing in Nebraska was in a large apartment. Leslie testified that her housing in Ohio would be in her fiance's home. There was no evidence presented concerning the quality of the neighborhoods for either housing, and there was no evidence presented to indicate that the housing in Ohio will, other than by offering a backyard, provide any benefit to Amber's best interests. There was no evidence presented to indicate that the available housing in Nebraska was in any way deficient. This consideration does not weigh in favor of removal.

### e. Educational Advantages

The record indicates that Amber has a learning deficiency and that she requires special education opportunities to benefit her reading difficulties. The record indicates that Amber's school in Nebraska had a specific program in place which was addressing Amber's needs. Leslie testified that she had not had an opportunity to look into the availability of any special education opportunities in Ohio. Leslie did not know what school Amber would attend in Ohio and did not know whether the school would employ a year-round calendar or a more traditional school calendar. Leslie did not provide any evidence about the relative quality of the schools in Nebraska or Ohio. Leslie failed to adduce any evidence which would suggest that removal to Ohio would afford Amber any educational advantage. This consideration does not weigh in favor of removal.

### f. Quality of Relationship Between Child and Parents

With regard to this consideration, the record indicates only that Amber has a good relationship with both parties and that by necessity, removal will impact her relationship with Brian and the amount of time she is able to spend with Brian. There was no evidence presented to indicate that Amber has a stronger relationship with either parent. There was no expert evidence produced indicating that removal should be allowed because of such a stronger bond with Leslie. Compare *McLaughlin v. McLaughlin,*

*supra* (expert recommended granting removal because of bond with custodial parent).

The effect of the removal of a child to another jurisdiction must be evaluated in light of the child's relationship with each parent. *Id.* See, also, *Brown v. Brown,* 260 Neb. 954, 621 N.W.2d 70 (2000). In this case, evaluating the effect of the removal in light of the child's relationship with each parent indicates that Amber's relationship with Brian will suffer, at least to the extent of a reduction in time spent together and in the frequency and ease of Amber's and Brian's contact with each other. There was no evidence presented to indicate that removal will have any impact on Amber's relationship with Leslie. This consideration, then, also does not weigh in favor of removal.

### g. Ties to Community and Extended Family

There was little evidence presented concerning Amber's ties to the community in Nebraska; she was only 9 years old at the time of the trial. Amber indicated in her deposition that she did have friends in Nebraska, and the record indicates that Amber does have some extended family in Nebraska. Specifically, one of Leslie's brothers, his wife, and their children are in the community in Nebraska. The record does not indicate what kind of relationship Amber has with those relatives. See *McLaughlin v. McLaughlin,* 264 Neb. 232, 647 N.W.2d 577 (2002). The record indicates that there is no such extended family in Ohio.

Of importance, Amber's half sister, Andrea, is also in the community in Nebraska; as noted above, Andrea is in Brian's sole custody. The record does indicate that Amber has a close relationship with Andrea. The Nebraska Supreme Court has specifically noted that the relationship of a child to siblings is entitled to consideration and weight. See *Brown v. Brown, supra* (court would be remiss not to consider relationship of children to younger siblings). As such, this consideration does not weigh in favor of removal.

### h. Hostilities Between Parties

The record indicates that the parties have experienced some disagreements and some communication problems, although both parties testified that they have been able to resolve their

communication problems and work together concerning Amber. Nonetheless, Leslie herself specifically testified that she believed that her communication with Brian would be adversely impacted if the court granted her request to remove Amber to Ohio. This consideration does not weigh in favor of removal.

### i. Conclusion on Quality of Life

As noted, the district court did not make specific findings concerning any of the best interests factors and did not make specific findings concerning any of the quality of life considerations. Our de novo review of the record, however, leads us to conclude that the quality of life considerations do not weigh in favor of allowing Leslie to remove Amber to Ohio. Even though there is no hierarchy of the considerations and no particular weight that must be given to any individual consideration in a given case, in the present case, the considerations almost uniformly fail to weigh in favor of removal. Leslie failed to prove an enhancement in the quality of life for Amber or herself from leaving Nebraska and going to Ohio. Because Leslie failed to adduce sufficient evidence to support a finding that Amber's quality of life would be enhanced, we find that this factor weighs against removal.

### (iii) Impact of Move on Contact Between Child and Noncustodial Parent

The third factor that must be considered is the effect of allowing Leslie to remove Amber to Ohio upon Brian's ability to maintain a meaningful parent-child relationship with Amber. As is true with most applications for removal, the frequency of the noncustodial parent's visitation will necessarily be diminished by distance. See *McLaughlin v. McLaughlin*, 264 Neb. 232, 647 N.W.2d 577 (2002). Instead of being in the same community as Brian, Amber would be living in Dayton. We conclude that the evidence presented in this case fails to support a finding that Brian's parent-child relationship with Amber will not be adversely impacted by granting the removal.

The effect on the parent-child relationship must be viewed in light of the court's ability to devise reasonable visitation arrangements. *McLaughlin v. McLaughlin, supra.* See, also, *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). A

significant difficulty in assessing the court's ability to fashion such a reasonable visitation arrangement in the present case exists because of Leslie's lack of knowledge concerning what school Amber would attend and what calendar that school utilizes. The record indicates that Dayton has schools which utilize a year-round calendar and schools which utilize a traditional calendar. Leslie did not know how many of either were in the area she intended to move to, and, as noted, she did not know what school Amber would attend or what calendar the school would use.

Although Leslie testified that she would be willing to pay the transportation costs to bring Amber back to Nebraska to visit with Brian, and although she was affirmatively ordered to do so, the inadequacies concerning Leslie's evidence about Amber's potential school schedule bring into question the reasonableness of the district court's visitation plan. In *McLaughlin v. McLaughlin*, 264 Neb. at 246, 647 N.W.2d at 590, for example, the custodial parent was willing to drive halfway to help the noncustodial parent maintain visitation and was willing to provide "extended summer visitation." The Nebraska Supreme Court specifically found that the noncustodial parent could still maintain a meaningful relationship with the child "through a reasonable visitation schedule, which included extended visitation in the summer." *Id.* See, also, *Vogel v. Vogel, supra* (diminished contact resulting from move from Nebraska to Virginia mitigated by award of liberal visitation including almost entire summer school break); *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000) (diminished contact resulting from move from Nebraska to Pennsylvania mitigated by reasonable visitation order including 6 consecutive weeks in summer). Compare *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000) (despite substantial and commendable concessions on visitation by custodial parent, it could not be reasonably questioned that move from Nebraska to New York would make existing relationship almost impossible to maintain). In the present case, however, Leslie failed to adduce evidence that Amber would even have an extended period of time in the summer during which Brian could exercise extended visitation. As such, the reasonableness of the district court's visitation order, which

specifically awarded Brian extended summer visitation, is not apparent on the basis of the evidence adduced by Leslie.

Although this case is similar to previous Nebraska removal cases, wherein it is almost always true that the noncustodial parent's visitation and contact with the child will necessarily be less than it would have been had the custodial parent and the child remained in Nebraska, this case is also different from such previous cases because of Leslie's failure to adduce sufficient evidence allowing us to determine the reasonableness of the district court's visitation order. The record presented is inadequate for us to determine that a reasonable visitation order can be entered which will mitigate the necessary reduction in time spent together by Brian and Amber. As such, it is impossible to determine that Brian's relationship with Amber will not be seriously damaged by allowing Leslie's removal of Amber to Ohio. As such, we conclude that this factor also does not weigh in favor of allowing removal.

### (iv) Conclusion on Best Interests

The record does not demonstrate sufficient support for the district court's conclusion that it is in Amber's best interests to be removed from Nebraska to Ohio. None of the factors to be considered in evaluating Amber's best interests weighs in favor of allowing removal. Leslie failed to adduce sufficient evidence to demonstrate how allowing removal of Amber to Ohio would serve Amber's best interests. Because Leslie failed to meet her burden of proof on this issue, we conclude that the district court abused its discretion in summarily finding that allowing the removal would be in Amber's best interests.

### (c) Conclusion on Removal

This is another in the growing line of difficult cases in Nebraska courts where a custodial parent seeks the opportunity to leave the state and relocate with a minor child. Like many of the previous cases, this one involves a noncustodial parent for whom the record does not contain negative evidence. The record reveals Brian to be a capable and loving father who vigorously exercises his visitation rights; has sole custody of Amber's half sister, Andrea; and desires to prevent the potential damage to his relationship with Amber that would arise from

Amber's removal to Ohio. In this case, the parties were divorced by a decree dated February 20, 2003, which was the result of a settlement agreement by the parties in which they agreed on all issues, including custody and visitation of Amber. Fewer than 10 months later, Leslie sought to remove Amber to Ohio, where Leslie's fiance lived and where she believed she had obtained new employment. When that employment did not come to fruition, Leslie withdrew her initial request. Approximately 5 months later, Leslie made a second request to remove Amber to Ohio. At trial, Leslie failed to adduce sufficient evidence to support her request for removal.

We conclude that Leslie failed to meet her burden of proving a legitimate reason for leaving Nebraska and removing Amber to Ohio. The record does not contain sufficient evidence to support a finding that Leslie's new employment opportunity in Ohio provides any opportunity for career or salary advancement greater than that of her employment in Nebraska. The record does not contain any evidence concerning the cost-of-living differences between Nebraska and Ohio, and the pay increase which Leslie did receive by taking the new employment will be almost entirely consumed merely by paying for transportation costs associated with bringing Amber to Nebraska to visit with Brian. As such, Leslie failed to meet her burden of proof on the threshold issue of establishing a legitimate reason for the move.

Additionally, Leslie failed to meet her burden of proof to demonstrate that removing Amber to Ohio would be in Amber's best interests. Although the motives of the parties in either seeking or opposing removal are equally balanced, the remaining factors to be considered in evaluating Amber's best interests—the potential for enhancement of Amber's quality of life and potential impact on the relationship between Amber and Brian—do not weigh in favor of allowing removal. Leslie failed to adduce sufficient evidence to demonstrate that removal to Ohio would be in Amber's best interests.

The district court abused its discretion in finding that Leslie had satisfied her burden of proof with respect to her request to remove Amber to Ohio. As such, we find merit to Brian's assignment of error, and we reverse the district court's order granting Leslie's request to remove Amber to Ohio.

### 3. CHANGE IN CUSTODY

Brian next asserts that the district court erred in denying his counterclaim seeking a change in custody. We conclude that Brian has not proven a material change of circumstances showing that Leslie is unfit or that the best interests of Amber require such action. As such, we find no merit to this assignment of error.

The issue of a change in custody must be considered separately and apart from the custodial parent's request to remove the child to another state. See *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002). Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.*; *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). An appellate court conducts a de novo review on the record in child custody determinations. See *id.* The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Id.* The Nebraska Supreme Court has previously stated that a request to remove a child from the state, without more, does not amount to a material change in circumstances warranting a change of custody. See *id.*

In the present case, Leslie testified that if the court denied her request to remove Amber to Ohio, she would return to Nebraska. Brian presented no evidence sufficient to demonstrate any material change in circumstances warranting a change of custody. Although we have concluded that it is in Amber's best interests to remain in Nebraska, we are not persuaded that Brian has sustained his burden of showing a material change in circumstances that would justify a change of custody. See *Tremain v. Tremain, supra*. As such, we find this assignment of error to be without merit.

### 4. ATTORNEY FEES

Finally, Brian asserts that the district court erred in denying his request for attorney fees. The district court ordered each party to pay his or her own fees and costs. We do not find such a determination by the district court to be an abuse of discretion.

The district court's decision on a request for attorney fees is reviewed de novo on the record and will be affirmed in the absence of an abuse of discretion. See *Gangwish v. Gangwish*,

267 Neb. 901, 678 N.W.2d 503 (2004). As noted above, we do not find sufficient evidence to attribute bad faith or ill motives to either party in this case, and the record does not establish any reason to conclude that the district court abused its discretion in ordering Brian and Leslie to pay their respective attorney fees. We find this assignment of error to be without merit.

## V. CONCLUSION

We find that the district court abused its discretion in granting Leslie's request to remove Amber to Ohio. We find that Leslie failed to meet her burden of proof to demonstrate a legitimate reason for the move and to demonstrate that removal to Ohio would be in Amber's best interests. Accordingly, we reverse the district court's order granting removal.

We find no abuse of discretion by the district court with respect to Brian's requests for a change of custody and for attorney fees. Accordingly, we affirm those findings of the district court.

AFFIRMED IN PART, AND IN PART REVERSED.