IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

PETERSON V. PETERSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

REGINE M. PETERSON, NOW KNOWN AS REGINE M. EFFINGER, APPELLEE,
V.
JAMES C. PETERSON, APPELLANT.

Filed November 25, 2014.    No. A-14-156.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

John A. Kinney and Jill M. Mason, of Kinney Law, P.C., L.L.O., for appellant.

Virginia A. Albers and Kathryn D. Putnam, of Slowiaczek, Albers & Astley, P.C., L.L.O., for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

James C. Peterson appeals an order of the district court for Douglas County, Nebraska, denying his application for modification of custody and removal of minor children from the jurisdiction. On appeal, James asserts that the court was biased against him, argues that the court erred in failing to allow him to remove the parties' minor children from the jurisdiction, and challenges the parenting plan implemented by the court. We find no merit to these assertions, and we affirm.

## II. BACKGROUND

This is an action in which James sought modification of the decree dissolving his marriage to Regine M. Peterson. Specifically, James sought to modify custody and remove from the jurisdiction the parties' minor children, Maxwell (Max) Peterson and Lillian Peterson.

- 1 -

James and Regine were married in 1992, in Nebraska. Max was born in 1997, and Lillian was born in 2000.

In 2000, the parties moved from Nebraska to Wisconsin, as a result of Regine's employment. The parties remained in Wisconsin for approximately 5 years. During that time, Regine was employed full time and James stayed home with the children.

In 2005, the parties moved to Colorado, again as a result of Regine's employment. The parties remained in Colorado for approximately 2½ years. During that time, both parties were employed outside the home.

In 2007, the parties moved to Nebraska, again as a result of Regine's employment. Once the parties moved to Nebraska, James again did not work outside the home.

In 2007, Regine filed for dissolution of the parties' marriage. A decree dissolving the marriage was entered in 2009. In the decree, James and Regine were awarded joint physical and legal custody of the children. James lived in Lincoln, Nebraska, at the time, and Regine lived in Omaha, Nebraska, at the time. James testified that he was the primary caregiver for the children at this time, that they attended school in Lincoln, and that Regine had parenting time with the children two evenings per week and alternating weekends.

In 2011, an order modifying the decree was entered by the district court. In the modification order, the court found that James had failed to comply with the parenting plan and that his failure to comply had materially affected the children and Regine's time with the children. As a result, the court modified the custody order and awarded Regine sole legal and physical custody, subject to James' rights to reasonable parenting time. The parenting plan required Regine to deliver the children to James in Lincoln for his parenting time and required James to return the children to Regine in Omaha at the conclusion of his parenting time.

The record indicates that after the modification, James failed to exercise all of his parenting time with the children. James testified that he struggled financially and that difficulties in affording gas for his vehicle prevented him from consistently exercising his parenting time. The record suggests that at one point, 2 months to 10 weeks may have elapsed without James' exercising parenting time and seeing the children. In response to questioning from the court, James indicated that he was earning $20 per hour and working approximately 40 hours per week during this time.

Subsequent to the dissolution, Regine remarried. Commencing in approximately 2010, James began a romantic relationship with the ex-wife of Regine's new husband, who lives in Wisconsin. In spring 2012, James began to reside in Wisconsin with his significant other on a part-time basis, spending slightly less than 2 weeks out of each month in Wisconsin. In January 2013, James sold his home in Lincoln and permanently relocated to Wisconsin. In June 2013, the two were married.

James testified he understood that in permanently relocating to Wisconsin, he risked not being able to take the children with him. At the time, the existing custody order had granted sole custody to Regine.

The record indicates that between January and August 2013, James exercised parenting time with the children for 1 week during their school spring breaks, for 1 week around the Memorial Day holiday, and for approximately 3 weeks from late-June to mid-July.

In May 2013, James filed an application seeking to modify the existing custody order to award him custody of the children and to permit him to relocate the children from Nebraska to Wisconsin. Regine answered, requested the court deny James' requests, and sought a modification of the parenting plan in light of James' previous relocation to Wisconsin.

At trial, the parties presented evidence concerning their communications with each other, their ability to work together to facilitate parenting time, the children's reactions to the various changes in circumstances since the time of the dissolution of marriage, and the children's preferences concerning living in Wisconsin or Nebraska. The district court ultimately entered an order in February 2013 in which it denied James' request for modification of custody and found that modification of custody would not be in the best interests of the children. The court found that there had been a material change of circumstances necessitating a modification of the parenting plan, in light of James' permanent relocation to Wisconsin. As a result, the court entered a new parenting plan.

This appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, James assigns five errors. First, James asserts that the district court "erred . . . in revealing its bias against James and cross-examining James inappropriately and failing to recuse itself." Second, James asserts that the district court "erred . . . in failing to address whether James maintained a legitimate basis to move to . . . Wisconsin." Third, James asserts that the district court "erred . . . by failing to apply the 'Farnsworth factors' to the evidence presented at trial." Fourth, James asserts that the district court "erred . . . in determining that removal of the minor children to Wisconsin was not in the best interests of the minor children." Finally, James asserts that the district court "erred . . . in adopting the Parenting Plan proposed by the Regine [sic]."

### IV. ANALYSIS

#### 1. MODIFICATION OF CUSTODY AND REMOVAL

We first address Regine's assertion, in response to James' brief on appeal, that James has not raised as an issue on appeal that the district court committed any error with respect to its denial of James' request for modification of custody. Regine argues that James "has not argued or assigned that issue in this appeal." Brief for appellee at 18. She argues that, as a result, this court cannot consider whether the district court erred in not modifying custody from the existing order's award of sole custody to her and that there is therefore no basis for a consideration of jurisprudence concerning removal--it is axiomatic that a noncustodial parent cannot be granted permission to permanently remove minor children from the jurisdiction.

Our review of James' brief on appeal indicates that, as Regine asserts, James did not specifically assign or argue that the district court committed any error with respect to the denial of a modification of custody. Above, we have largely quoted the exact language used by James in assigning his errors, and a review of those assignments makes it clear that none of them indicates any challenge to the court's failure to modify custody. Indeed, with respect to removal itself, James' assignments of error are focused on the court's failure to actually apply a removal

analysis to this case, and each assignment related to removal very specifically is focused on removal and not custody.

Additionally, a review of James' argument section in his brief on appeal reveals not a single mention related to custody. Rather, James' argument is focused primarily on the fact that the district court failed to address whether he had demonstrated a legitimate basis for his move to Wisconsin, as the first component of demonstrating that removal of the children is appropriate, and on the fact that the district court failed to apply the various factors for demonstrating that removal is in the children's best interests under *Farnsworth v. Farnsworth*, 257 Neb. 252, 597 N.W.2d 592 (1999). Indeed, James specifically points out in argument that "[t]he trial court completely ignored the . . . factors . . . for analyzing the potential a removal to Wisconsin would hold for enhancing the quality of life of James and the parties' children." Brief for appellant at 26. In referencing the trial court's analysis of the best interests of the children, James did not make any assertion even mentioning custody, but, rather, emphasized that the court's best interests analysis and findings "are completely void of any reference to [the *Farnsworth*] factors." Brief for appellant at 28.

James' entire argument on appeal is presented in terms of the court's failure to grant him permission to remove the children from the jurisdiction as if his request was a typical request of a custodial parent for permission to remove the children. It does not contain any recognition that the trial court first denied his request for a change of custody or that this court would necessarily have to find that decision to be error to even consider the appropriateness of allowing removal.

In his reply brief, James asserts that "[b]y assigning as error the trial court's failure to allow removal of the minor children to Wisconsin, James also assigned as error the failure to award custody of the minor children to James," and argues that the court could not have awarded him custody without also allowing the children to be removed and could not allow removal without simultaneously awarding him custody. Reply brief for appellant at 2. He argues that Regine's assertion that he failed to assign and argue as error the denial of modification of custody is "a hyper-technical view of the words to be used when assigning errors" and would require "an academic exercise with no utility." *Id.* He also asserts that the best interests analysis would be identical under a determination of custody and a determination of removal. We disagree with these contentions.

First, it is a longstanding and clearly established rule of procedure in Nebraska's appellate courts that for an issue to be properly considered by the appellate court, it must be both specifically assigned and specifically argued. See, *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014); *Lenz v. Central Parking System of Neb.*, 288 Neb. 453, 848 N.W.2d 623 (2014); *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014); *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014); *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014); *Sutton v. Killham*, 22 Neb. App. 257, 854 N.W.2d 320 (2014); *State v. Fioramanti*, 22 Neb. App. 52, 847 N.W.2d 95 (2014). As "hyper-technical" as this rule may seem, the rule has been applied in a variety of contexts, including civil, criminal, and juvenile matters, to preclude appellate consideration of issues that were actually assigned or actually argued, but not properly or specifically enough presented. *Id.* It has also been applied to situations where litigants arguably attempted to impliedly raise issues on appeal but failed to explicitly do so. See, *Lenz v. Central Parking System of Neb., supra* (assignments of error were

broad enough to encompass variety of claims, but arguments limited to specific issues were only ones addressed on appeal as properly raised); *Sutton v. Killham, supra* (party made arguments about actions of receiver related to operation of oil wells, but issue was not both specifically assigned and argued and was not addressed on appeal as not properly raised). Regardless of whether James believes this rule to be "hyper-technical," the rule is well established, very clear, and not difficult to comply with. James' brief simply includes no assignment of error or argument whatsoever addressing the district court's finding that custody should not be modified.

Second, we disagree with James' assertion that the two issues are necessarily identical and subsumed within each other. Although, as noted, it is axiomatic that a parent cannot be granted permission to remove a child from the jurisdiction without being the custodial parent, the issues of whether custody should be modified and whether removal should be permitted involve wholly separate and distinct considerations. Contrary to James' assertion, despite his prior move to Wisconsin, a finding by the district court that modification of custody would be warranted would not be conclusive on the determination of whether removal would be appropriate. For example, in *Wild v. Wild*, 13 Neb. App. 495, 696 N.W.2d 886 (2005), this court dealt with a situation wherein the custodial parent had permanently moved from the jurisdiction and then sought permission from the court to remove the children. On appeal, we concluded that custody should not be modified but that removal was not appropriate, resulting in the custodial parent's having to return to the jurisdiction.

The determination of whether there has been a material change of circumstances justifying modification of custody and whether a change in custody is in the best interests of the children is not the same as a determination of whether removal of a child from the jurisdiction is in the child's best interests. This is clear simply from a recognition that the analysis set forth in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), specifically recognizes particular considerations in assessing best interests of the child in the context of removal cases that are not specifically at issue in modification of custody cases. It is entirely possible that the trial court could have found that modification of custody would be appropriate, but not removal of the children to Wisconsin. Instead, the court made a finding that modification of custody was not at issue and, logically, did not reach the removal issue that James has chosen to assert on appeal should have been addressed.

In the present case, if James wished to challenge the district court's determination that modification of custody was not warranted, he could and should have assigned that as error and argued it specifically in his brief. Had he been successful in making that argument, then the issue of removal would have been properly raised to us. In that event, if James had been successful on the custody issue, we likely would have been required to reverse the district court's order and remand the matter for findings related to the removal issue. Our standard of review on removal determinations is to review the custody determination de novo, but normally to affirm the trial court's determinations in the absence of an abuse of discretion. *State on behalf of Savannah E. & Catilyn E. v. Kyle E.*, 21 Neb. App. 409, 838 N.W.2d 351 (2013). Because the various factors to be considered are largely factual determinations that must be carefully weighed on a case-by-case basis, we would be unlikely to engage in a determination of those factual matters where the trial court, by virtue of not reaching them, had not made any determinations to be reviewed.

Instead, James has presented an appeal to us that appears to argue that the trial court was in error for not reaching the removal issue or for not applying removal law to the determination of custody in the first instance. That is not the same as specifically challenging the court's failure to modify custody and then separately specifically challenging the court's failure to grant permission for removal. While James' argument on appeal, and in fact his specific representations in his reply brief, would seem to suggest a belief that determination of the removal issue and the custody issue would be the same, our prior jurisprudence indicates that not to be the case.

Recently, in *State on behalf of Savannah E. & Catilyn E. v. Kyle E., supra*, we recognized the unusual procedural posture of a case such as the present one, where a noncustodial parent simultaneously seeks to modify custody and to be granted permission to then remove the children from the jurisdiction. In that case, in fact, we noted that we were unaware of any reported cases with a similar factual situation. *Id.* We also specifically concluded that the appropriate procedure in such a situation is to *first* consider whether a modification of custody is appropriate and *then* to consider whether removal is appropriate. *Id.* That conclusion only further demonstrates that the analysis on modification of custody and on removal is not interchangeable in cases where the noncustodial parent is seeking to modify custody and then remove the children from the jurisdiction, and each issue must be reviewed separately.

In this case, the district court properly addressed the modification of custody issue first and concluded that James had failed to demonstrate that a modification of custody was warranted. The court thus did not reach the removal issue, did not address whether James had a legitimate reason to leave the jurisdiction, and did not engage in any analysis of the *Farnsworth* factors relative to best interests of the children. James' assertions on appeal are limited to asserting that the court erred in not engaging in the removal analysis, but presented no assignment or argument that the court first erred in failing to modify custody. In this procedural posture, James has not demonstrated any error by the trial court in not engaging in a removal analysis. James' assignments of error related to the removal issue are, thus, without merit.

## 2. BIAS OF TRIAL COURT

James has also assigned as error and argued that the district court erred in failing to recuse itself after demonstrating "bias and disbelief of James' testimony." Brief for appellant at 22. We find no merit to this assertion.

A motion requesting a judge to recuse himself or herself on the ground of bias or prejudice is addressed to the discretion of the judge, and an order overruling such a motion will be affirmed on appeal unless the record establishes bias or prejudice as a matter of law. *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013). A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even if no actual bias or prejudice is shown. *State v. Hubbard*, 267 Neb. 316, 673 N.W.2d 567 (2004).

The Nebraska Supreme Court has held that a judge must be careful not to appear to act in the dual capacity of judge and advocate. *Torres v. Morales*, 287 Neb. 587, 843 N.W.2d 805 (2014). A judge must be impartial, his or her official conduct must be free from even the appearance of impropriety, and a judge's undue influence in a trial may tend to prevent the

proper presentation of the cause of action. *Id.* However, a party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality. *Id.*

In the present case, the basis for seeking recusal and for suggesting that the district court demonstrated bias or prejudice stems entirely from the fact that the court engaged in questioning of James during his testimony. The court has a statutory right to engage in the questioning of witnesses. See Neb. Rev. Stat. § 27-614(2) (Reissue 2008). Our review of the questioning that James asserts on appeal demonstrated bias and "conveyed sarcasm" indicates that the court inquired of James about details related to his employment and earnings during the period of time that he asserted he had been unable to afford gas to travel from Lincoln to Omaha to exercise parenting time and other subjects related to James' credibility and the veracity of other witnesses, such as the children's therapist. Brief for appellant at 21.

Contrary to James' assertions, the cold record presented to us on appeal does not demonstrate sarcasm or bias, but, rather, it shows that the trial court, as the finder of fact in this matter, was seeking to understand discrepancies and inconsistencies in the testimony. For example, James cites to the following exchange between the court and himself:

Q. Did you understand the risk you would be taking by possibly the children not moving with you?

A. Yes, I did.

Q. And you were willing to take that risk in order to, I guess, be with the one you loved?

A. . . . [Y]es.

Q. All right.

That exchange followed James' indication to the court that he had made the decision to permanently relocate to Wisconsin in the spring of 2012, as his relationship with the woman who later became his new wife "got stronger" and that "it made sense for [him] to live somewhere where [he] was with a person [he] loved."

Immediately following the exchange quoted above, specifically referenced by James in his brief on appeal, is another exchange between the court and James that further demonstrates that the court's questioning of James was in an attempt to clarify and understand his testimony for purposes of reaching an appropriate decision.

The record indicates that the weekend prior to the trial on James' motion for modification of custody and for removal, James was in Lincoln preparing for trial. The parties' son, Max, received permission from Regine to spend the night with a friend in Lincoln, and Regine's understanding was that the friend's parents would return Max to Omaha the next morning. The friend's parents stopped at Regine's home prior to leaving to take Max to Lincoln, and Regine learned for the first time that James was the one who planned to return Max from Lincoln to Omaha the next morning. Regine examined Max's cell phone text message history and discovered that Max and James had exchanged messages about Max's "plan."

The court asked James questions about the incident. The court asked James why he had not contacted Regine to tell her that he was going to be the one transporting Max from Lincoln to

Omaha, and James replied that Regine had "arranged the . . . trip to Lincoln." The following exchange then happened:

Q. Oh, she knew that you were going to drive Max from Lincoln to Omaha?

A. She knew? No. I don't know. It's between her and Max. I don't know what happened. Max called me and said, can you give me a ride back . . . to Omaha.

Q. Okay. And did you call [Regine] then and let her know that you were going to be driving Max back?

A. No, because it was already prearranged.

Q. Oh, she already prearranged it with --

A. She arranged it with Max.

Q. Oh, she arranged it with Max for you to drive Max from Lincoln to Omaha?

A. Um, I don't know. It was between her and Max. Max called and said, can you give me a ride back to Omaha, and I said, yes, I'm heading up there . . . .

Q. So she arranged with Max that you were going to pick him up in Lincoln and drive him to Omaha?

A. That's what Max told me.

Q. So Max told you -

A. Uh-huh.

Q. -- that his mother knew that you were going to drive him from Lincoln to Omaha?

A. That -- that his -- that she knew that I was going to drive him?

Q. . . . [Y]es.

A. Yeah, I don't -- I don't know what they had discussed because he was with . . . a friend of his.

Q. Sir, you don't know what they discussed, you just got through telling me that's what they discussed because that's what Max told you.

A. Right.

Q. So let me start all over again, sir.

A. Okay.

Q. Did she know that you were going to drive Max from Lincoln to Omaha?

At that point in the exchange, James' counsel objected to the court's questioning James about what Regine might or might not have known. The court overruled the objection, indicating that it was confused by James' testimony that Regine knew that he would be driving Max to Omaha and his answers that indicated he did not know what Regine knew. Further questioning resulted in testimony that Max had indicated to James that Regine and Max's friend's mother had spoken about James' driving him back to Omaha. James eventually testified that he had not called Regine because Max "was under the care of [his friend's parents]" and James was "just the driver."

On appeal, James cites this court to authority in the context of criminal jury trials, wherein the appellate courts have specifically cautioned against the trial court's engaging in aggressive questioning of witnesses and urging the trial court's exercise of its authority to examine witnesses be used sparingly. See, *Rush v. Smith*, 56 F.3d 918 (8th Cir. 1995); *State v.*

*Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982); *Smith v. State*, 182 Md. App. 444, 957 A.2d 1139 (2008). In the present case, however, there was no jury to form any negative impression or opinion based on the court's examination of James. Indeed, in response to James' motion for recusal, the court specifically explained that it normally did not ask questions during jury trials because in that setting the court is not the finder of fact. The court indicated that in domestic matters, especially custody cases where the court is charged with being the finder of fact and basing its decision on the best interests of the child, the court felt compelled to ask questions to elicit information it believes it needs to appropriately resolve the issue. The court specifically indicated that its questioning of James was, as we suggested above, "for the purpose of answering some of the voids that were in the direct examination and the cross-examination," particularly related to James' not exercising parenting time when he lived in Lincoln and the children were in Omaha. The court noted that to the extent part of James' counsel's objection to the questioning related to the length of time the court questioned James--an assertion also made on appeal--the reason for the length of time the questioning lasted was "because it was tough getting appropriate answers." The exchange we quoted above concerning Max's trip to Lincoln is an example of James' answering questions that we believe is consistent with the court's representation in this regard.

Contrary to James' assertion on appeal, exchanges like those pointed to in this appeal do not demonstrate bias or prejudice such that the court's denial of James' motion for recusal constituted an abuse of discretion. This assigned error is meritless.

3. PARENTING PLAN

Finally, James asserts that the district court erred in adopting the parenting plan proposed by Regine. James' objection on appeal appears to be limited to the fact that the parenting plan adopted by the court requires him to be responsible for transporting the children to Wisconsin and for returning them to Omaha and does not make Regine responsible for any costs of transportation or involvement in the time involved in transportation to or from Wisconsin. He also objects to a provision of the parenting plan that requires him to provide notice of his intent to exercise holiday parenting time or lose the right to exercise it. We find no merit to this assertion.

Child custody determinations, and visitation determinations, are initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003). A trial court's determination of the terms of an appropriate parenting plan to serve the best interests of the children is within the discretion of the court and is affirmed on appeal in the absence of an abuse of discretion. See *Kamal v. Imroz*, 277 Neb. 116, 759 N.W.2d 914 (2009) (recognizing that district court has discretion to determine best interests of child, that parenting plan shall serve best interests, and finding no abuse of discretion with regard to parenting plan).

The determination that James should be responsible for the time and cost of exercising parenting time with the children after his permanent relocation to Wisconsin is not an abuse of discretion. James voluntarily decided to permanently relocate himself to Wisconsin, and he testified that he was aware of the potential risk that the court would not ultimately enter an order

allowing him to remove the children from the jurisdiction to Wisconsin. See *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014) (order requiring custodial parent to share burden of transportation once noncustodial parent became employed instead of immediately not abuse of discretion where noncustodial parent relocated from jurisdiction voluntarily).

The determination that James should provide notice of his intent to exercise holiday visitation is, similarly, not an abuse of discretion. The record in this case demonstrates that the parties have historically not communicated well with one another. Regine testified to prior incidents involving confusion between the parties about whether James would exercise vacation and holiday parenting time and prior incidents where she was unable to get a response from James about the subject. There is no indication of why providing notice presents any meaningful burden on James or constitutes an abuse of discretion. This assigned error is meritless.

## V. CONCLUSION

We find no merit to James' assertions on appeal. With respect to his several assignments of error related to the district court's failure to engage in an analysis under removal jurisprudence, we find no merit in light of James' failure to raise as an issue on appeal the district court's denial of James' request to modify custody. We also find no merit to James' assertions regarding the trial court's bias or the adoption of a parenting plan. We affirm.

AFFIRMED.