Mirab Lasu, appellee, v.
Hussein Issak, appellant.
___ N.W.2d ___

Filed July 28, 2015.    No. A-14-478.

1. **Appeal and Error.** In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error.

2. **Affidavits: Appeal and Error.** A district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Reissue 2008) is reviewed de novo on the record based on the transcript of the hearing or the written statement of the court.

3. **Child Custody: Property Division: Child Support: Alimony.** Domestic matters such as child custody, division of property, child support, and alimony are entrusted to the discretion of trial courts.

4. **Appeal and Error.** A trial court's determinations on domestic matters are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

5. **Judgments: Appeal and Error.** In reviewing orders on domestic matters, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice.

6. **Child Support: Rules of the Supreme Court: Appeal and Error.** Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

7. **Fees: Time: Appeal and Error.** After the district court denies a request to proceed in forma pauperis, the appellant has 30 days to appeal the ruling or proceed by paying the docket fee.

8. **Child Support: Rules of the Supreme Court: Presumptions.** In general, child support payments should be set according to the

Nebraska Child Support Guidelines, which are applied as a rebuttable presumption.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. All orders for child support obligations shall be established in accordance with the provisions of the Nebraska Child Support Guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied.

10. **Child Support: Rules of the Supreme Court.** The trial court may deviate from the Nebraska Child Support Guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate.

11. \_\_\_\_: \_\_\_\_. The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes.

12. \_\_\_\_: \_\_\_\_. Absent a clearly articulated justification, any deviation from the Nebraska Child Support Guidelines is an abuse of discretion.

13. \_\_\_\_: \_\_\_\_. If the district court fails to indicate that a deviation from Neb. Ct. R. § 4-218 (rev. 2014) is warranted, it abuses its discretion if its child support order drives the obligor's income below the poverty line set forth in § 4-218.

14. **Child Support.** There is no precise mathematical formula for calculating child support when subsequent children are involved.

15. \_\_\_\_. Calculation of child support when subsequent children are involved is left to the discretion of the court as long as the court considered the obligations to both families and the income of the other parent of the subsequent children.

16. **Child Support: Rules of the Supreme Court.** When a deviation from the Nebraska Child Support Guidelines is appropriate, the trial court should consider both parents' support obligations to all children involved in the relationships.

17. **Child Support.** In considering the obligation to subsequent children, the trial court should take into consideration the income of the other parent of these children as well as any other equitable considerations.

18. \_\_\_\_. The specific formula for making calculations for the obligation to subsequent children is left to the discretion of the trial court, as long as the basic principle that both families are treated as fairly as possible is adhered to.

19. \_\_\_\_. In ordering child support, a trial court has discretion to choose if and how to calculate the deviation, but must do so in a manner that does not benefit one family at the expense of the other.

20. **Child Support: Rules of the Supreme Court.** A parent's support, childcare, and health care obligation shall not reduce his or her net income below the minimum net monthly obligation for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support may be ordered as defined in Neb. Ct. R. § 4-209.

21. ____: ____. Under Neb. Ct. R. § 4-218 (rev. 2014), the minimum net monthly child support obligation for one person is derived from the Federal Register poverty guidelines.

22. **Child Support.** When dealing with a situation where a parent's household is not a one-person household, the poverty guidelines as updated annually in the Federal Register should be used as the resource for determining the basic subsistence level for that household.

23. ____. To determine an obligor's net income for calculating support obligations, a court subtracts the following annualized deductions from the obligor's gross income: taxes, FICA, allowable retirement contributions, previous court-ordered child support to other children, and allowable voluntary support payments to other children.

24. **Child Support: Rules of the Supreme Court.** Under the Nebraska Child Support Guidelines, to determine if the obligor's income exceeds the minimum subsistence level, a court deducts the obligor's support obligations that are specified in the guidelines from the obligor's net income.

25. ____: ____. When an obligor's combined household income is below the poverty guidelines as updated annually in the Federal Register, the district court should order minimum support pursuant to Neb. Ct. R. § 4-209 or otherwise set forth specific reasons for deviating from the basic subsistence requirement.

26. ____: ____. Under the Nebraska Child Support Guidelines, it is recommended that in very low income cases, a minimum support of $50 or 10 percent of the obligor's net income, whichever is greater, per month be set.

27. **Child Support.** When determining child support in a complex multi-family situation, trial courts should be careful not to order a disproportionate amount of a child support obligor's net income to go to the children at issue and the goal must be for fairness for all the children for whom a parent must provide support.

Appeal from the District Court for Douglas County: Thomas A. Otepka, Judge. Reversed and remanded with directions.

Patrick McCormick for appellant.

Brandie M. Fowler and Kyle C. Allen, of Higgins Law, for appellee.

INBODY, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Hussein Issak appeals from a decree of paternity entered by the Douglas County District Court, which established his paternity of two minor children he had with Mirab Lasu and ordered him to pay child support in the amount of $613 per month. On appeal, Issak argues that the district court did not properly consider the federal poverty guidelines when establishing his support obligation; namely, he argues the district court failed to take into consideration that he is the head of a 10-person household where the combined income is below the federal poverty guidelines.

This case requires us to address language contained at Neb. Ct. R. § 4-218 (rev. 2014) which has evaded consideration by our appellate courts to date. In 2014 (the year applicable to this appeal), § 4-218 set forth a basic subsistence limitation based upon a "minimum of $973 net monthly *for one person, or the poverty guidelines updated annually in the Federal Register*." (Emphasis supplied.) We conclude that the italicized language requires looking at the poverty guideline table found in the Federal Register when an obligor's household consists of more than one person. Since § 4-218 was not properly considered by the district court in determining child support in this case, we reverse, and remand with directions.

## FACTUAL BACKGROUND

Issak was married in Kenya before he and his wife moved to the United States. Issak and his wife have a total of eight children together, three born in Kenya (in 1999, 2000, and 2002) and five born in Douglas County, Nebraska (in 2006, 2008, 2010, 2012, and 2013). At all times during the district

court proceedings below, Issak and his wife remained married and lived together.

While still married to his wife, Issak also had two children with Lasu: Samuel Lasu, born in 2010, and Daniel Lasu, born in 2012. Lasu also has six children from a previous marriage; two reside with her.

## PROCEDURAL BACKGROUND

On April 10, 2012, Lasu filed a complaint for paternity, custody, and support against Issak, alleging that he was the biological father of her minor child, Samuel. According to a motion filed by Lasu on July 3, the parties had entered into an agreement resolving all issues in her complaint, and on July 16, the district court entered a decree of paternity and support, ordering Issak to pay $500.54 per month for Samuel's support.

On July 25, 2012, Issak filed a motion to vacate the paternity decree (through newly retained counsel), alleging that he did not know or understand the contents of the decree and that his support obligation brought him below the poverty line for his household (including Issak, his wife, and their seven children at the time of the motion). Following a hearing, the court entered an order on August 1, granting Issak's motion to vacate.

On August 23, 2012, without leave of court, Lasu filed an amended complaint against Issak for paternity, custody, and support seeking to establish paternity and support for a second minor child, Daniel, born subsequent to her initial complaint for paternity. Upon Issak's request, the court treated this amended complaint as the operative complaint and permitted Issak to file an answer to the amended complaint on August 29.

No action was taken in the case for several months, and in February 2013, Lasu's attorney was permitted to withdraw.

On May 3, 2013, through newly retained counsel, Lasu filed a motion for leave to file a second amended complaint for paternity and a motion for temporary orders. The court

entered an order on June 4, granting Lasu's motion to file a second amended complaint. Lasu filed her second amended complaint on July 2, seeking the court to establish Issak as the father of both Samuel and Daniel, to award her sole physical custody, and to order Issak to pay child support. Issak filed an answer on July 23, raising the "Affirmative Defense" and "Counterclaim" that the Nebraska and federal poverty guidelines are applicable to the case.

On August 28, 2013, Lasu filed another motion for temporary orders. The district court entered a temporary order on November 1, awarding Lasu sole legal and physical custody of Samuel and Daniel, and ordering Issak to pay $591 per month in child support commencing November 1.

On November 5, 2013, Issak filed a motion for relief from the temporary order, alleging that he and his wife added another child to their household subsequent to his July 25, 2012, motion to vacate (for a total of eight minor children with his wife), and he sought a deviation from the child support guidelines, seeking to pay $50 per month for both Samuel and Daniel. Lasu filed an objection to this motion on December 6, 2013. The court overruled Issak's motion on December 19.

Apparently, the parties were able to resolve all issues raised in Lasu's second amended complaint with the exception of Issak's child support obligation for Samuel and Daniel, and trial was held on April 16, 2014, to resolve that sole issue. The parties stipulated that Issak was the natural father of Samuel and Daniel; that Lasu was a fit and proper person to have sole legal and physical custody of the minor children, subject to Issak's weekly visitation; that Lasu would pay up to $480 of nonreimbursable medical expenses, per child, per year; and that Lasu would claim the dependency exemptions.

For purposes of calculating child support, the parties stipulated that Issak's wife's total monthly income was $1,386.67 and that she and Issak had eight minor children in their household. The parties further stipulated that Lasu pays $171 in child support to the father of her six other children, two

of whom reside in her household. The parties further stipulated to the exhibits entered into evidence: Issak's 2013 tax return, child support payment history report from the Nebraska Department of Health and Human Services, Lasu's pay statement, Issak's pay statement, Lasu's 2013 tax return, and two proposed child support calculations submitted by Issak and Lasu as aids to the court.

Both parties used $975 for Lasu's total monthly income and $2,415.88 for Issak's total monthly income in their child support calculations. Lasu's proposed calculation provided that Issak's child support obligation was $613 for two children and was $423 for one. Lasu arrived at this figure by first completing a joint physical custody support calculation between Issak and his wife (using his wife's stipulated income), and she determined that Issak would hypothetically owe his wife $318 per month in support under a joint physical custody arrangement. Lasu represented to the court that this first calculation "already contemplates the poverty guidelines and makes the required adjustment pursuant to the Nebraska Child Support Guidelines Section 4-218." Lasu then stated she provided Issak credit for his preborn children by incorporating that $318 figure into her proposed calculation between Issak and Lasu as Issak's "regular support for other children."

Issak calculated that his support obligation for his two children with Lasu would be $91, using a two-step calculation. First, he calculated what child support he would have to pay his wife if she was awarded custody of six of their eight children (because the income shares table went up to only six children); his calculation resulted in $1,231 in monthly child support. Issak then used that figure as a credit to be applied in his calculation of support owed to Lasu for Samuel and Daniel.

On May 12, 2014, the court entered an order for paternity, custody, and support. The court's order states that the parties had reached an agreement with regard to paternity and custody, and adduced evidence related to Issak's obligation to provide child support to Samuel and Daniel. The

order established Issak as the father of the minor children, and Lasu was awarded sole legal and physical custody. The court adopted Lasu's proposed child support calculation and ordered Issak to pay support in the amount of $613 per month for both children commencing May 1, 2014. The court found and ordered that Lasu's "Exhibit 16 comports with the spirit and intent of *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998), as well as Nebraska Child Support Guideline Sections 4-205 and 4-220 . . . . This amount and the deviation are in the best interests of the minor children at issue." The net income figure for Issak relied upon by the court was $1,729, which was arrived at after deductions for taxes, FICA, retirement, and $318 attributed to support for Issak's other children.

On May 22, 2014, Issak filed a notice of appeal and an application to proceed in forma pauperis; attached to his application was a poverty affidavit asserting he has eight children and a wife who reside in his household and averring that his monthly expenses exceeded his adjusted gross income and that he receives "approximately $700 per month from the Supplemental Nutrition Assistance Program." On May 23, Lasu filed an objection to Issak's application to proceed in forma pauperis. A hearing on Issak's application was held on June 11. Issak testified he thought he had about $90 in his bank account. On June 16, the district court entered an order concluding that Issak had not established evidence that he was unable to pay the expected fees and costs for his appeal, and it denied his application to proceed in forma pauperis.

On July 14, 2014, Issak paid the statutory docket fee; he did not file an appeal of the denial of his application to proceed in forma pauperis.

## ASSIGNMENTS OF ERROR

On appeal, Issak argues, summarized and restated, that the district court erred (1) in denying his application to proceed in forma pauperis and (2) in determining that his child support obligation was $613 per month commencing May 1, 2014.

[1] Although Issak appears to argue in the body of his brief about the temporary child support orders and award of attorney fees awarded to Lasu during the pendency of the action, Issak did not assign any errors beyond the two stated above. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014).

## STANDARD OF REVIEW

[2] A district court's denial of in forma pauperis status under Neb. Rev. Stat. § 25-2301.02 (Reissue 2008) is reviewed de novo on the record based on the transcript of the hearing or the written statement of the court. *Peterson v. Houston*, 284 Neb. 861, 824 N.W.2d 26 (2012).

[3-5] Domestic matters such as child custody, division of property, child support, and alimony are entrusted to the discretion of trial courts. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). A trial court's determinations on such issues are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Id*. Under this standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice. *Id*.

[6] Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Gress, supra*.

## ANALYSIS

*Denial of In Forma Pauperis.*

[7] We first address Issak's claim that the district court erred in denying his request to proceed in forma pauperis on appeal. After the district court denied his request to proceed in forma pauperis on June 16, 2014, he had 30 days to appeal the ruling or proceed by paying the docket fee. See § 25-2301.02(1). See, also, *Glass v. Kenney*, 268 Neb. 704,

687 N.W.2d 907 (2004); *Martin v. McGinn*, 265 Neb. 403, 657 N.W.2d 217 (2003). Instead of appealing the denial of his request for in forma pauperis status, Issak paid the statutory docket fee on July 14, 2014. Having chosen to pay the docket fee rather than appeal the denial of his request for in forma pauperis status, Issak cannot now be heard to complain of this issue.

*Child Support.*

Issak argues the district court abused its discretion in its determination of his child support obligation for Samuel and Daniel, because the income for his family of 10 is below the poverty guidelines as updated in the Federal Register, even prior to any order of child support, and therefore the court should have ordered him to pay only minimum support pursuant to Neb. Ct. R. § 4-209.

In its May 12, 2014, "Order for Paternity, Custody & Support," the district court found and ordered that Lasu's "Exhibit 16 comports with the spirit and intent of *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998), as well as Nebraska Child Support Guideline Sections 4-205 and 4-220 . . . . This amount and the deviation are in the best interests of the minor children at issue." The court's reference to *Prochaska v. Prochaska*, 6 Neb. App. 302, 573 N.W.2d 777 (1998), indicates that consideration was given to Issak's obligation to support children in more than one family, and the court's references to Neb. Ct. R. §§ 4-205 (deductions) and 4-220 (duty to support subsequent children as defense for upward modification of existing support order) indicate consideration of these particular factors. However, there is no indication that the court considered the application of § 4-218 (basic subsistence limitation) on the child support ordered; perhaps because on its face, the child support order of $613 subtracted from the net monthly income of $1,729 used by the court left Issak with $1,116, which kept Issak above $973 (the poverty guideline basic subsistence level for one person in 2014). However, as noted at the outset of this

opinion, § 4-218 sets forth only the poverty guideline for one person—it does not set forth the basic subsistence levels for households consisting of more than one person. Rather, it appears to direct us to the Federal Register for the poverty guideline figures for households in excess of one person. In the more common divorce or paternity situation, a noncustodial parent's household may often consist of just one person; however, as obvious in this case, a noncustodial parent's household may consist of a spouse and other dependent children. In such cases, taking the poverty guideline figure that has been calculated for one person's basic subsistence and applying that same figure to a much larger family results in an inequitable outcome.

This court is mindful that a trial court is faced with a very difficult task when trying to calculate a fair amount of child support in this type of multifamily situation. In *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005), this court reviewed a paternity action involving a minor child born to a mother and father not married to each other, but each married to other people with whom they also had children. We noted the complex multifamily situation and concluded that the child support and retroactive support ordered in that case resulted in a disproportionate amount of the father's net income going to the child at issue and that our concern must be for fairness for all the children. We also recognized that a perfectly fair economic result cannot be expected. *Id*.

In *Henke, supra*, the father was ordered to pay $252 per month retroactive to the first day of the month following the child's birth. Since the order was entered 43 months after the child's birth, this resulted in an immediate arrearage of $10,836, excluding interest. The father was ordered to pay $50 per month (in addition to current support of $252 per month) to address the arrearage. In considering the father's net income of $1,048.97 and the basic subsistence limitation of $748 for one person at that time, this court noted that the $252 child support order and the monthly $50 retroactive payment would leave the father with a monthly income $1.03

below the basic subsistence limitation. This court stated that the father must meet his current obligations for a family of five and concluded that the circumstances and equities—the father's lack of ability to pay and the needs of his other children—required a deviation as to the retroactive support. This court modified the retroactive support from $252 per month to $50 per month, thereby reducing the arrearages to a total of $2,150.

We note that this court in *Henke, supra*, did not consider the poverty guidelines for a family of five when reviewing the father's support obligation, and instead, it appeared to rely solely on the basic subsistence limitation for one person. However, in *Henke*, this court was focused on the application of the poverty guidelines with respect to the retroactive support only, since that was the error assigned on cross-appeal by the father. It was not argued that the poverty guidelines should be applied for a family of 5 when determining child support, as is being argued in the present case for Issak's family of 10.

[8-10] In general, child support payments should be set according to the Nebraska Child Support Guidelines, which are applied as a rebuttable presumption. See *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013). All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. *Id.* See, also, Neb. Ct. R. § 4-203 (rev. 2011). The trial court may deviate from the guidelines whenever the application of the guidelines in an individual case would be unjust or inappropriate. *Pearson, supra*.

[11-13] The main principle behind the Nebraska Child Support Guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes. See Neb. Ct. R. § 4-201. However, absent a clearly articulated justification, any deviation from the guidelines is an abuse of discretion. *Gress v.*

*Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). If the district court fails to indicate that a deviation from § 4-218 (basic subsistence) is warranted, it abuses its discretion if its child support order drives the obligor's income below the poverty line set forth in § 4-218. See *id.*

[14-19] The instant case involves numerous minor children from various different relationships: Issak and his wife have a total of eight minor children together; while still married to his wife, Issak had two children with Lasu; and Lasu has six children from a previous marriage, two of whom reside with her. Both Lasu and the Issaks receive governmental assistance. There is no precise mathematical formula for calculating child support when subsequent children are involved. See *Brooks v. Brooks*, 261 Neb. 289, 622 N.W.2d 670 (2001). Such calculation is left to the discretion of the court as long as the court considered the obligations to both families and the income of the other parent of the subsequent children. See *id*. Subsequent familial relationships vary widely from case to case. *Id.* When a deviation from the guidelines is appropriate, the trial court should consider both parents' support obligations to all children involved in the relationships. *Brooks, supra*. In considering the obligation to those subsequent children, the trial court should take into consideration the income of the other parent of these children as well as any other equitable considerations. *Id*. The specific formula for making such calculations is left to the discretion of the trial court, as long as the basic principle that both families are treated as fairly as possible is adhered to. *Id.* In other words, a trial court has discretion to choose if and how to calculate the deviation, but must do so in a manner that does not benefit one family at the expense of the other. See *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005).

The district court in the instant case was faced with somewhat unusual and complicated familial relationships, and it chose to adopt Lasu's proposed child support calculations to account for Issak's eight minor children who he supports with his wife. The court's worksheet attached to the decree

purported to provide Issak with a $318 credit as the hypothetical child support he would owe to his wife for six of their eight children if they shared joint physical custody, bringing his net monthly income to $1,729.17. This resulted in Issak owing $613 per month in child support for Samuel and Daniel. However, giving Issak a credit of only $318 to support the eight children in his current household while paying $613 to support the two in Lasu's household is on its face not equitable. A significant flaw in Lasu's proposed calculation is the premise underlying the joint physical custody calculator she used which provides for a lower monthly child support obligation but must also include contributions for reasonable and necessary direct expenses such as clothing and extracurricular costs associated with the children. See Neb. Ct. R. § 4-212 (rev. 2011). These additional contributions were not considered in Lasu's calculation. Based upon Lasu's proposed calculation, after subtracting the $613 child support obligation from Issak's net income, his remaining income would be $1,116.17 per month, which on its face is above the basic subsistence level of $973 for one person in 2014. See § 4-218.

[20] However, Issak's central argument on appeal is that the district court's calculations essentially treated him as a single person, when in reality he is the head of a 10-person household whose total household income is below the poverty guidelines updated annually in the Federal Register. Issak relies on § 4-218, which provided:

A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $973 net monthly for one person, *or* the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2), except minimum support may be ordered as defined in § 4-209.

(Emphasis supplied.) Our courts have never explicitly addressed the latter part of § 4-218 referencing the poverty guidelines in the Federal Register.

[21,22] It is clear that under § 4-218, the minimum of "$973 net monthly for one person" is derived from the Federal Register poverty guidelines. The 2014 Federal Register provided that the poverty guideline for a household of one was $11,670 in annual income, which equals $973 per month. However, as Issak points out, he is *not* part of a one-person household; rather, he is married and supporting eight other minor children with his wife. Section 4-218 provides that a parent's support, childcare, and health care obligation shall not reduce his or her net income below $973 net monthly "*for one person.*" By logical extension, when dealing with a situation where a parent's household is *not* a one-person household, as in the instant case, the poverty guidelines as updated annually in the Federal Register should be used as the resource for determining the basic subsistence level for that household.

[23-26] Issak, his wife, and their 8 children constitute a household of 10. According to the 2014 poverty guidelines set forth in the Federal Register, the poverty guideline for a household of 10 was $48,210 in annual income, or $4,018 per month. In looking at the child support worksheet attached to the district court's order, Issak's net monthly income at the time of trial was $2,047.17 and his wife's net monthly income was $1,280.77, after providing them with the applicable deductions set forth in § 4-205. See, also, *Molczyk v. Molczyk*, 285 Neb. 96, 825 N.W.2d 435 (2013) (to determine obligor's net income for calculating support obligations, court subtracts these annualized deductions from obligor's gross income: taxes, FICA, allowable retirement contributions, previous court-ordered child support to other children, and allowable voluntary support payments to other children; to determine if obligor's income exceeds minimum subsistence level, court deducts obligor's support obligations that are specified in guidelines from obligor's net income). The combined monthly net income available to the Issaks' household of 10 in 2014 was $3,328, roughly $690 below

the poverty guidelines of $4,018 per month as set forth in the Federal Register. Therefore, the Issaks' combined household income fell below poverty guidelines even before any award of child support was entered. Because Issak's income, even when combined with his wife's income, was below the poverty guidelines for a household of 10 (as updated annually in the Federal Register), see § 4-218, the district court should have ordered minimum support pursuant to § 4-209 or otherwise set forth specific reasons for deviating from the basic subsistence requirement. Section 4-209 provides that in very low income cases, "a minimum support of $50, or 10 percent of the obligor's net income, whichever is greater, per month be set." Ten percent of Issak's net income would be $205 in child support for Samuel and Daniel.

[27] Similar to our earlier discussion of *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005), we note again here that when determining child support in a complex multi-family situation, trial courts should be careful not to order a disproportionate amount of a child support obligor's net income to go to the children at issue, and that the goal must be for fairness for all the children for whom a parent must provide support. One way that might be accomplished in this case, for example, is to take only Issak's monthly net income of $2,047 into consideration when thinking about how much of that net income would be needed to support 10 children if his was the only source of income. Looking at a total monthly net income of $2,000 in the child support guidelines income shares table, we can see that $1,025 in monthly child support would be allocated to provide for six children. The income shares table stops at six children, and while the guidelines tell us how to calculate child support for income that exceeds the levels provided for in the table, the guidelines do not tell us how to calculate child support when a parent is responsible for supporting more than six children, as in the case before us. Pursuant to the table, a monthly net income of $2,000 calls for child support in the following amounts: $507 (one child),

$723 (two children), $830 (three children), $895 (four children), $960 (five children), and $1,025 (six children). At this income level, once reaching three children, we can see that the increments increase by $65 for each additional child. If we extrapolate that out to 10 children (8 in current household, 2 in Lasu's), the guidelines would suggest that $1,285 per month would be recommended to support those 10 children, or $128.50 per child. Ordering minimum support in this case pursuant to § 4-209 results in Issak owing $205 per month for the two children in Lasu's household, or $102.50 per child (this per child figure is supplied only for the purpose of showing comparable resources for each of Issak's 10 children and is not to be construed to mean that Issak's child support would reduce to $102.50 if only one of his children with Lasu remained eligible for child support). The minimum support based upon 10 percent of Issak's net income results in a much more fair allocation of Issak's net resources to all of Issak's 10 children. If we use our calculation of $1,285 per month in child support for 10 children, the district court's child support order of $613 per month for 2 children would result in almost half of the child support resources going to just 2 children, with the other half of the resources being shared by 8 children. As stated previously, a trial court has discretion to choose if and how to calculate a deviation where multiple families are involved, but must do so in a manner that does not benefit one family at the expense of the other. See *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005).

We therefore reverse the portion of the trial court's order setting the amount of child support to be paid by Issak, and consistent with our analysis above, we remand the cause to the district court with directions to enter an order finding Issak's child support obligation to be $205 per month for Samuel and Daniel effective May 1, 2014. Because of the many variables already discussed that can influence child support calculations in a multifamily case like this, neither the district court nor this court can calculate at this time what Issak would

owe in child support payable to Lasu when there is just one remaining minor child owed support. The parties will have to consider the familial circumstances, financial resources, and poverty guidelines, if applicable, relevant at that time and seek modification accordingly if warranted.

## CONCLUSION

We conclude that Issak's household income was below the federal poverty guidelines for a household of 10 and that thus, he should have been ordered to pay only minimum support. We therefore reverse the district court's order of child support and remand the cause to the district court with directions to enter an order finding Issak's child support obligation to be $205 per month for Samuel and Daniel effective May 1, 2014.

Reversed and remanded with directions.